IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHANE PATRICK KNOWLTON, | CASE NO. 1:25-cv-1088 |
| Petitioner, | DISTRICT JUDGE |
| | CHARLES ESQUE FLEMING |
| vs. | |
| | MAGISTRATE JUDGE |
| WARDEN JOSSETTE OKEREKE, | JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Shane Patrick Knowlton has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Knowlton is in custody at the Correctional Reception Center and challenges his conviction and sentence in the case *State v. Knowlton*, Ashtabula County Court of Common Pleas, Case No. 2021 CR-355. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss in part and deny in part Knowlton's Petition.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts underlying Knowlton's conviction as follows:

> {¶4} Ryan McBride testified that, in July 2021, he lived with his fiancée, Brittnie Schmidt. Knowlton shared children with Schmidt. McBride and Knowlton were having "issues" with each other around that time. On July 23, 2021, McBride sent a series of six messages to Knowlton through Facebook Messenger, which included one stating "Your f***ing hit!", and described that he had taken care of Knowlton's kids. Subsequent to these messages, Knowlton replied "bye bye." McBride then sent a message which stated "Wya [where you at] so we can settle this like men." Knowlton replied with comments that McBride supported the children with social security and food stamps. He then stated: "[Y]ou are a pervert and will be dealt with accordingly. Even if it means I do life in prison ... you are a b**ch who smacks a woman around. You know where I'm at." He then provided an address: "956 West 52nd." After further discussion, Knowlton stated: "Come see me. I'm always here," to which McBride responded: "I will. Don't you worry." McBride continued "Imma show you. Better hope you can fight" and "Ain't no saving you this time." The messages concluded with Knowlton stating, "Well I'm here."

> {¶5} McBride drove to the location provided by Knowlton, accompanied by two friends, Scott Lindsay and Justin Nemergut. He described that the purpose of going to see Knowlton was to engage in a "fist fight." When McBride arrived at the address given by Knowlton, which was alternately referred to as a "shop" or "garage" and Knowlton's "house," McBride got off of his motorcycle and took his pistol off of his hip, handing it to Lindsay. He then took off his shirt, hat, and glasses and began walking toward

Knowlton with his hands down at his side. The two exchanged insults and profanity. While McBride approached, Knowlton pulled a gun and pointed it at McBride. McBride said "this is how we're really gonna do it," and then Knowlton opened fire. Knowlton hit McBride in the bicep and the shoulder. McBride turned around, began to flee, and a third shot hit him in the back, passing through his lung. He made it past his motorcycle and went to the ground. Lindsay then handed his gun to him and McBride tried to shoot back but was unable to fire. He then started "going in and out" and could not breathe.

{¶6} McBride indicated that after the shooting, he told the police he had initially set his gun down on Lindsay's motorcycle and had retrieved his gun from the ground rather than from Lindsay. He described that he was not clear-headed at the time he spoke with police as he was in the hospital and on pain medication.

{¶7} Lindsay and Nemergut testified that they went with McBride to Knowlton's garage. Lindsay knew McBride intended to fist fight Knowlton and believed McBride contacted him to make sure he "didn't get jumped or anything." Nemergut was aware McBride intended to confront someone. Once the three men arrived at Knowlton's address, McBride took his pistol off and asked Lindsay to hold it and "took his shirt off to fight." Lindsay observed Knowlton fire shots from across the street. He saw McBride was shot, grabbed him, and dragged him out of the road. Nemergut testified that Knowlton was on the garage property while firing and McBride was standing in the road by his motorcycle. Nemergut indicated that Knowlton fired three shots, the gun jammed, he fired a few more, the gun jammed again, and more shots were fired.

{¶8} After the shooting began, Lindsay ran to his motorcycle to retrieve McBride's gun, gave it to him, but then told him not to shoot. Around that time, Knowlton left the scene. Lindsay subsequently

threw the gun in the nearby grass because he was a felon who could not be in possession of a gun. He initially lied to police about McBride handing him the gun because he did not want to get in trouble. Lindsay stated that McBride had not pointed a gun at Knowlton before the shooting began and McBride did not enter onto the property where Knowlton was located, explaining that McBride "never made it" to "that side of the street."

{¶9} Jerry Wheatley was visiting with Knowlton on July 23 and, during that time, Knowlton told him he "probably didn't want to hang out very long." While the two men were talking, Wheatley saw motorcycles pulling up "quickly." He saw McBride get off of his bike, take off his shirt, pull a gun from his pants, and hand it to a man who arrived with him, all of which occurred before McBride got close to Knowlton. Knowlton and McBride began yelling and McBride and his friends approached the shop. Wheatley dove behind a van and shots were fired. He heard about five or six shots and observed that Knowlton's gun jammed. Wheatley did not see anyone with McBride pointing a gun at Knowlton.

{¶10} After responding to the scene, Detective Wesley Burns of the Ashtabula City Police Department recovered two casings from the driveway area where Knowlton had been located. Officer Ryan White found McBride's firearm in a bush in the vicinity of the shooting. Knowlton was not present when police arrived at the scene.

{¶11} Avery Ellis, a friend of Knowlton's father who was present during the shooting, testified for the defense. He saw McBride and the others arrive on motorcycles, coming in "fast * * * with a purpose it would seem." McBride was yelling and ripped off his hat, glasses, and shirt, and headed toward Knowlton. He saw what he "assumed * * * was a gun" in McBride's waistband. He observed Knowlton fire from the middle of the driveway in front of the building and did not hear Knowlton make any threats. He indicated that the whole incident lasted

4

> about 30 seconds. He testified that Nemergut had a
> gun and "they were shooting back."

*State v. Knowlton,* No. 2023-A-0013, 2023 WL 6807193, at *1–2 (Ohio Ct. App.
Oct. 16, 2023).

### Procedural background

*Trial court proceedings*

In August 2021, an Ashtabula County Grand Jury indicted Knowlton on one count: felonious assault, in violation of Ohio Revised Code § 2903.11(A)(2)/2903.11(D)(1)(a), with a three-year firearm specification. Doc. 15-1, at 6 (Exhibit 1).[1] At his arraignment, the court appointed Knowlton counsel and Knowlton entered a plea of not guilty. *Id*. at 8 (Exhibit 2).

In November 2022, Knowlton filed a request for the court to approve the hiring of investigator Tom Pavlish to assist with witness interviews. Doc. 15-1, at 9 (Exhibit 3). The trial court granted the request. *Id*. at 13 (Exhibit 4).

In December 2022, Knowlton filed a notice that he intended to offer evidence of self-defense. Doc. 15-1, at 14 (Exhibit 5). He also filed a motion asking the court to order that five police interviews of witnesses be transcribed, *id*. at 16 (Exhibit 6), which the trial court granted, *id*. at 19. (Exhibit 7).

The case proceeded to a jury trial. The jury returned a verdict finding Knowlton guilty as charged in the indictment. Doc. 15-1, at 20–21 (Exhibit 8). In February 2023, the trial court sentenced Knowlton to an indefinite sentence

---

[1]     In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

of four years minimum and six years maximum on the felonious assault charge, to be served consecutively to and after the mandatory three-year firearm specification, for a total of seven to nine years in prison. *Id.* at 22–23 (Exhibit 9).

*Direct appeal*

In March 2023, Knowlton filed in the Ohio court of appeals a timely notice of appeal. Doc. 15-1, at 48 (Exhibit 14). In his brief, Knowlton, through new counsel, raised the following assignment of error:

> The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence.[2]

Doc. 15-1, at 61 (Exhibit 15). On October 16, 2023, the Ohio court of appeals affirmed the trial court's judgment. *Id.* at 78–87 (Exhibit 17).

Knowlton, pro se, timely appealed to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Knowlton set forth the following proposition of law:

> The conviction of Felonious Assault is against the manifest of weight due to Appellant's claim of self-defense.

Doc. 15-1, at 97 (Exhibit 19). On February 6, 2024, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Knowlton's appeal. *Id.* at 115 (Exhibit 20).

---

[2]     In this report and recommendation, Knowlton's grounds for relief are reproduced as written.

*Ohio Appellate Rule 26(B) application to reopen direct appeal*

On November 28, 2023, Knowlton filed in the Ohio court of appeals a pro se Ohio Appellate Rule 26(B) application to reopen his direct appeal. Doc. 15-1, at 116 (Exhibit 21). In his application, Knowlton alleged that his appellate counsel was ineffective for failing to raise the following assignments of error:[3]

> 1. The trial court erred in failing to instruct the jury on the offense of aggravated assault, as a lesser included offense of felonious assault when evidence was present of serious provocation and actual sudden passion and fit of rage.
>
> 2. Ineffective assistance of trial counsel.
>
> 3. Prosecutorial misconduct violated the protections afforded by the Fifth, Sixth and Fourteenth Amendments to The United States Constitution as well as Article 1, Section 10 of the Ohio Constitution.

*Id*. at 118–22 (Exhibit 21). On January 24, 2024, the Ohio court of appeals overruled Knowlton's application to reopen. *Id*. at 172–80 (Exhibit 22).

Knowlton filed a motion for leave to file a motion for reconsideration and en banc review. Doc. 15-1, at 181, 184 (Exhibits 23 & 24). On March 14, 2024, the Ohio court of appeals granted Knowlton's motion for leave but then overruled his motion for reconsideration and en banc review. *Id*. at 190–93 (Exhibit 25).

---

[3]    A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id*.

Knowlton appealed to the Ohio Supreme Court. Doc. 15-1, at 194 (Exhibit 26). In his memorandum in support of jurisdiction, Knowlton set forth the following propositions of law:

> 1. "Whether the Appellate Court erred when reviewing Appellant's Application to Reopen pursuant to App. R. 26(B) when it decided the merits of the issues presented rather than if a 'genuine issue' as to a 'colorable claim' of ineffectiveness of Appellate counsel existed by requiring Appellant to conclusively establish success of the issues presented."
>
> 2. "The prosecutor's conduct violated the Appellants due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution."
>
> 3. "The trial court erred in failing to instruct the jury on the offense of aggravated assault, as a lesser included offense of felonious assault when evidence was present of serious provocation and actual sudden passion and fit of rage."
>
> 4. "The ineffective assistance of trial counsel violated the Appellant's Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution."

*Id*. at 201–09 (Exhibit 27). On May 28, 2024, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Knowlton's appeal. *Id*. at 222 (Exhibit 28). Knowlton filed a motion for reconsideration, *id*. at 223 (Exhibit 29), which the Ohio Supreme Court denied, *id*. at 227 (Exhibit 30).

*Post-conviction motions*

On April 8, 2024, Knowlton filed a request for leave to file a motion for new trial, stating that his incarceration prevented him from obtaining "newly discovered evidence," including an affidavit by Thomas Knox. Doc. 15-1, at 228

(Exhibit 31). A week later, Knowlton filed a "petition to vacate and/or set aside judgment of conviction and/or sentence." *Id*. at 233 (Exhibit 32). In his petition, Knowlton raised the following claims:

> 1. The defendant's Constitutional rights to due process afforded by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated by the ineffective assistance of trial counsel.
>
> 2. Detective Howell manufactured, fabricated and/or introduced erroneous information to the prosecution's key witnesses.
>
> 3. The prosecutor knowingly used false and/or perjured testimony to misled the jury.
>
> 4. The prosecutor committed a Brady violation by withholding exculpatory evidence showing perjury.
>
> 5. Direct Appeal counsel was ineffective for failing to fully investigate this case before filing the appellate brief in direct appeal violated the defendant's Sixth and Fourteenth Amendment rights.
>
> 6. Trial counsel was ineffective for failing to provide or review with the defendant any written report from the private investigator hired by the defense.
>
> 7. Trial counsel was ineffective for failing to ensure successful service of subpoena to ensure defense witness Thomas Knox was present during trail or securing deposition.
>
> 8. The trial court erred by failing to instruct the jury on the inferior offense of Aggravated Assault where serious provocation was present.
>
> 9. Trial counsel was ineffective for failing to investigate a second firearm recovered near the crime scene.

> 10. The prosecution violated the defendant's right to remain silent.
>
> 11. The prosecution violated the ban on the "Golden Rule" argument thus violating the defendant's right to a fair trial and due process of law, Fifth, Sixth and Fourteenth Amendments.

*Id.* at 245–85 (Exhibit 32). On May 20, 2024, the trial court overruled Knowlton's post-conviction petition and his motion for a new trial.[4] *Id.* at 288–92 (Exhibit 33).

Knowlton appealed to the Ohio court of appeals. Doc. 15-1, at 293 (Exhibit 34). In his brief, he raised the following assignments of error:

> 1. The trial court deprived Appellant of his right to due process under the Fourteenth Amendment by failing to make adequate findings of fact and conclusions of law before denying Appellant's Petition for Post-Conviction Relief Motion as required by R.C. 2953.21.
>
> 2. The trial court erred by failing to hold a hearing on the Appellant's Petition for Post-Conviction Relief.
>
> 3. The trial court abused its discretion by denying defendant's motion for leave to file a motion for new trial without a hearing.
>
> 4. The defendant's Constitutional rights to due process afforded by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the ineffective assistance of trial counsel.
>
> 5. The defendant's Constitutional rights to due process afforded by the Fifth, Sixth and Fourteenth

---

[4]     The trial court also denied Knowlton's then-pending motions to compel disclosure, appoint him counsel, provide an expert, and hold an evidentiary hearing. Doc. 15-1, at 291–92.

Amendments to the United States Constitution were violated by the prosecutorial misconduct.

6. The trial court erred by failing to instruct the jury on the inferior offense of Aggravated Assault where serious provocation was present.

Doc. 15-1, at 317–34 (Exhibit 35). The State filed an opposition brief, *id*. at 338 (Exhibit 36), and Knowlton filed a reply, *id*. at 359 (Exhibit 37). On December 16, 2024, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 395–411 (Exhibit 38).

On December 31, 2024, Knowlton filed a motion for reconsideration and en banc review, which the Ohio court of appeals overruled. *Id*. at 413, 420 (Exhibits 39 & 40). Knowlton did not appeal.

*Federal habeas corpus petition*

Knowlton states that on May 19, 2025, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[5] Doc. 1. In his petition, he raises the following grounds for relief:

> **Ground one**: The conviction of Felonious Assault is against the manifest of weight due to Appellant's claim of self-defense.

> **Ground two**: The trial court erred by failing to instruct the jury on the inferior offense of Aggravated Assault where serious provocation was present.

> **Ground three**: Ineffective assistance of trial counsel violated the defendant's U.S. Sixth and

---

[5]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Fourteenth Amendment Right to effective assistance of counsel.

**Ground four:** Prosecutorial misconduct violated the protections afforded by the Fifth, Sixth and Fourteenth Amendments to The United States Constitution as well as Article 1, Section 10 of the Ohio Constitution.

**Ground five**: Ineffective assistance of appellate counsel violated the defendant's U.S. Sixth and Fourteenth Amendment Right to effective assistance of counsel.

Doc. 1, at 6–17. The Warden filed a Return of Writ, Doc. 15, and Knowlton filed a traverse, Doc. 26. Also pending is Knowlton's Motion for leave to expand the record, Doc. 25, which the Warden has opposed, Doc. 27.

### Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting

*Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

### Exhaustion

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no

longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not

16

addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

**Ground one is not cognizable.**

In ground one, Knowlton alleges that his conviction is against the manifest weight of the evidence "due to [his] claim of self-defense." Doc. 1, at

6. 24. The Warden argues that ground one is not cognizable for two reasons, and that, alternatively, it would fail on the merits. Doc. 15, at 12–20.

Federal habeas corpus is available only on "behalf of a person in custody … in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court does not "reexamine state-court determinations on state-law questions"); *Engle v. Isaac*, 456 U.S. 107 (1982). A manifest-weight claim is not cognizable on federal habeas review "because it is a state-law argument." *Thomas v. Taskila*, 2023 U.S. App. LEXIS 30660, at *17 (6th Cir. Nov. 16, 2023); *Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) ("It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review") (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023).

Knowlton argues that his manifest-weight claim is cognizable because the Ohio court of appeals' finding that his conviction was supported by the manifest weight of the evidence "must necessarily include a finding of sufficiency." Doc. 26, at 36 (citing *Nash v. Eberlin*, 258 F. App'x 761, 764–65 (6th Cir. 2007)). And a sufficiency-of-the-evidence claim *is* cognizable on federal habeas review. It is true that in *Nash*, the Sixth Circuit liberally construed the pro se petitioner's state-law, manifest-weight claim as a sufficiency-of-the-evidence claim, and therefore found that it was properly before the court for federal habeas review, because "the state court's decision

18

on the manifest weight of the evidence subsumed a decision on the sufficiency of the evidence." 258 F. App'x at 764 n.4.

But even if this Court were to liberally construe Knowlton's manifest-weight claim as a sufficiency-of-the-evidence claim, the claim would still be not cognizable. This is so because ground one is based on Knowlton's claim of self-defense. Doc. 1, at 6, 24–25; Doc. 26, at 36–56. And a sufficiency of self-defense evidence is not a cognizable claim. As the Sixth Circuit has explained:

> the Ohio Supreme Court held that the amendments to Ohio's self-defense statute "did not eliminate the defendant's burden of production regarding a claim of self-defense." *State v. Messenger*, 216 N.E.3d 653, 660 (Ohio 2022). The court emphasized that the amended self-defense statute did not change the elements of any offense: "Self-defense remains an affirmative defense in Ohio, and an affirmative defense is not an element of a crime." *Id*. at 659. The court concluded that "the sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production" regarding a self-defense claim while the prosecution's "new burden of disproving the defendant's self-defense claim beyond a reasonable doubt" is subject to review under the manifest-weight-of-the-evidence standard. *Id*. at 660.

> "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged," but "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York*, 432 U.S. 197, 210 (1977). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime."

> *Caldwell v. Russell*, 181 F.3d 731, 741 (6th Cir. 1999), *abrogated on other grounds as recognized by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). Because self-defense remains an affirmative defense under Ohio law, the prosecution's alleged failure to present sufficient evidence to disprove that Smith acted in self-defense or in defense of another did not raise a constitutional concern. Smith's manifest-weight-of-the-evidence argument likewise presented a state-law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Given that Smith's arguments about her affirmative defenses did not raise a constitutional issue, reasonable jurists could not debate the district court's rejection of her first three grounds for relief.

*Smith v. Smith*, No. 24-3251, 2024 WL 4287901, at *3 (6th Cir. July 2, 2024), *cert. denied sub nom. Smith v. Olds*, No. 24-5652, 2024 WL 4874711 (U.S. Nov. 25, 2024); *see also Smith v. United States*, 568 U.S. 106, 110 (2013) ("While the Government must prove beyond a reasonable doubt 'every fact necessary to constitute the crime with which [the defendant] is charged,' '[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required.'")) (internal citations omitted). So any sufficiency claim that this Court were to liberally construe would be not cognizable.

Knowlton, for the first time in his traverse, asserts that he "first … argues whether or not the State presented sufficient evidence that he shot Ryan McBride." Doc. 26, at 37, 76. But Knowlton did not say this in his petition—he only stated that he was challenging the manifest weight of his self-defense claim. Doc. 1, at 6, 24. Knowlton is not permitted to raise a new

claim in his traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *see Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019). Furthermore, Knowlton only raised on direct appeal a manifest-weight argument as to his self-defense claim, Doc. 15-1, at 61, and this is what the Ohio court of appeals considered, *see Knowlton*, 2023 WL 6807193, at *2. So any purported sufficiency-of-the-evidence claim regarding whether Knowlton shot McBride would be procedurally defaulted, even if this Court were to (twice) liberally construe ground one. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)).

### Portions of ground five are procedurally defaulted and the remainder fails on the merits[6]

In ground five, Knowlton argues that appellate counsel was ineffective for failing to raise, on direct appeal, three claims: (1) the trial court erred in "failing to instruct the jury on aggravated assault, as a lesser included offense of felonious assault when evidence was present of serious provocation and actual sudden passion and fit of rage"; (2) ineffective assistance of trial counsel for failing to do fourteen things; and (3) eight instances of prosecutorial misconduct. Doc. 1, at 31–33.

---

[6]    For convenience, I discuss Knowlton's grounds out of chronological order.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011). "Or, in more concrete terms, a federal court may grant relief only if *every* '"fairminded juris[t]"' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101).

22

The *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). So Knowlton must show that appellate counsel's assistance was objectively unreasonable and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Appellate counsel is not obligated to advance every possible argument on appeal, *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983), nor is counsel ineffective for failing to raise an issue that lacks merit, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

With these principles in mind, I discuss each of Knowlton's ineffective-assistance-of-appellate-counsel claims in turn.

1. *Appellate counsel's failure to raise the trial court's failure to include an aggravated-assault jury instruction.*

Knowlton argues that appellate counsel was ineffective for failing to raise, on direct appeal, a claim that the trial court erred when it failed to include a jury instruction for aggravated assault. Doc. 1, at 31–32. Knowlton raised this claim in his Rule 26(B) application to reopen. Doc. 15-1, at 118. The Ohio court of appeals considered this claim as follows:

The Ohio Supreme Court has adopted the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the appropriate standard to assess whether an appellant has raised a "genuine issue" as to the ineffectiveness of appellate counsel in an application to reopen an appeal. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996). "To show ineffective assistance," the appellant "must prove that his counsel [was] deficient for failing to raise the issues that he now presents and that there was a reasonable probability of success had they presented those claims on appeal." *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶ 5.

\*\*\*

In his first error, Knowlton argues that appellate counsel was ineffective for failing to argue that the lower court should have given a "lesser included" instruction on aggravated assault. Knowlton was charged and convicted of felonious assault and no instruction for aggravated assault was sought or given to the jury.

As the Ohio Supreme Court explained in *State v. Deem*, 40 Ohio St.3d 205, 533 N.E. 2d 294 (1988), aggravated assault is an offense of an inferior degree to felonious assault rather than a lesser included offense, since "its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *Id.* at 210-211. In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. *Id.* at paragraph four of the syllabus.

A two-part inquiry is conducted when analyzing whether there is sufficient evidence of provocation. First, "an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201,

24

694 N.E.2d 1328 (1998). Provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d 630, 635, 590 N.E.2d 272 (1992). "If the objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" (Citations omitted.) *State v. Hale*, 11th Dist. Portage No. 2007-P-0015, 2007-Ohio-6244, ¶66.

Knowlton argues that there was sufficient evidence of serious provocation because there were "allegations of inappropriate behavior between the victim and [Knowlton's] * * * daughters." While the record did contain references to Knowlton's belief that McBride, who was dating Knowlton's former girlfriend, had harmed his children in some manner, the record does not indicate that this suspicion caused a "sudden passion or fit of rage." The text message which precipitated the confrontation was initiated by McBride. McBride sent a series of text messages to Knowlton, stating "And for you to talk like someone is touching your kids you got me all the way f***ed up" and indicating that McBride was caring for Knowlton's kids. Knowlton initially responded, "Bye bye." He subsequently stated that his child learned to kiss since McBride was in the home. Knowlton did not respond with shock to McBride's message but, instead, his messages indicated that Knowlton had not just learned this information at or around the time he shot McBride. Further, although Knowlton argues that he acted in a sudden fit of passion, he did not seek out McBride to harm him. Rather, McBride was the one who suggested they "settle this like men."

Knowlton alleges that, although there was a period of time between his learning of the alleged abuse and the assault, his rage was reignited when McBride came to confront him. However, there was no discussion of the allegations during the physical

25

confrontation. If anything, it appears that the men both had a plan to engage in a fight with Knowlton providing McBride his location. "Mutual combat" has been found to be a "'classic example' of serious provocation." *State v. Spencer*, 2018-Ohio-641, 105 N.E.3d 418, ¶ 18 (12th Dist.), citing *Shane* at 635. However, mutual combat has not been found applicable where both parties were not engaging in a fight while armed with deadly weapons. *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 15 ("This may have been a consensual fight, but it was not on equal terms, and only James had a weapon."). The facts in the present matter demonstrated McBride did not have his weapon on him during the altercation.

Given the limited evidence to support a finding that Knowlton was acting in a sudden passion or fit of rage, we do not find error in the trial court's failure to give such instruction or ineffectiveness by trial counsel for failing to seek such instruction. As this court has observed "in most cases, an aggravated assault instruction is incompatible with instructions on self-defense, so that both cannot be given together." *State v. Beaver*, 119 Ohio App.3d 385, 397, 695 N.E.2d 332 (11th Dist. 1997). It is evident from a review of the trial transcript that defense counsel chose to focus on a strategy of pursuing self-defense in the present matter.

Doc. 15-1, at 172–76.

As an initial matter, Knowlton argues that the Ohio court of appeals applied "an incorrect [Rule 26(B)] standard" when it evaluated his application. Doc. 25, at 68–69 (citing Rule 26(B)'s two-step process and *State v. Leyh*, 185 N.E.3d 1075 (Ohio 2022)). In *Leyh*, the Ohio Supreme Court reiterated that there is a two-step process for evaluating Rule 26(B) applications. 185 N.E.3d at 1079. First, the court considers whether the application has shown "a

'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Id*. If not, the court denies the application. *Id*. If so, the court grants the application and "the matter proceeds to the second stage" and treated "as if it were an initial direct appeal with briefing and oral argument." *Id*. at 1079–80.

Knowlton complains that the Ohio court of appeals in his case erroneously decided his application at the first step.[7] Doc. 26, at 68, 150. And so, Knowlton submits, the appellate decision is not a merits-based decision entitled to AEDPA deference and his claims should be reviewed de novo. *Id*. at 69; Doc. 1, at 21–23. But the fact that the Ohio court of appeals decided Knowlton's claim at the first step is still a merits decision entitled to AEDPA deference.[8] *See e.g.*, *Wolters v. Smith*, No. 24-3970, 2025 WL 1312141, at *4 (6th Cir. Apr. 25, 2025) (explaining that the Ohio court of appeals' rejection of the petitioner's Rule 26(B) application at the first step was a merits decision entitled to deference; "the Ohio Court of Appeals plainly reviewed Wolters's

---

[7] To the extent that Knowlton asserts that the Ohio court of appeals incorrectly applied it's Rule 26(B) standard, such a claim would be not cognizable. *See Wolters v. Smith*, No. 24-3970, 2025 WL 1312141, at *4 (6th Cir. Apr. 25, 2025).

[8] The case Knowlton cites in support involved a procedurally defaulted claim that the state court didn't address on the merits. Doc. 25, at 69 (citing *McKee v. Hart*, No. 5:16-cv-410, 2017 LEXIS 83044, at *20 (E.D. Ky. Apr. 6, 2017) (applying de novo review to a claim that the state courts did not consider on the merits)). Here, the Ohio court of appeals evaluated Knowlton's ineffective-assistance-of-appellate-counsel claim, so AEDPA deference applies to the Ohio court of appeals' decision.

claims on the merits, and his challenges to Ohio procedure are 'not cognizable in federal habeas review.'") (citation omitted); *Ludwick v. Warden, Chillicothe Corr. Inst.*, No. 1:24-cv-51, 2025 WL 1446906, at *2 (S.D. Ohio May 20, 2025) (finding that the Ohio court of appeals' denial of the petitioner's Rule 26(B) application to reopen at the first step of that state procedure "was a merits determination."); *see Haliym v. Mitchell*, 492 F.3d 680, 693 (6th Cir. 2007) ("we conclude that an Ohio court's finding that there is 'no genuine issue,' which denies the *Murnahan* application at stage one of the two stage procedure, is a determination on the merits"). Accordingly, the Ohio court of appeals' decision is entitled to AEPDA deference.[9]

Knowlton argues that there was evidence of "serious provocation" and "a reasonable probability that the jury could have found provocation" that would have entitled him to an aggravated assault instruction. Doc. 26, at 28, 32. For his *serious provocation* argument, Knowlton says that "discovering a spouse in the act of adultery" is a "classic example[] of serious provocation." *Id.* at 28. He claims that he discovered such an act of adultery between his children and McBride. *Id.* at 29–30. Aside from the fact that neither of these individuals are Knowlton's spouses, the Ohio court of appeals found that any provocation that Knowlton may have experienced due to his belief regarding these matters

---

[9] Even so, Knowlton's claim would also fail under de novo review.

occurred well in advance of his shooting McBride.[10] Doc. 15-1, at 174–75. Knowlton concedes that "a cooling off period may have elapsed," but contends that "the fire would have become rekindled the moment the face-to-face encounter took place." Doc. 26, at 30–31. The Ohio court of appeals considered this argument and rejected it, finding that "there was no discussion of the[se] allegations during the physical confrontation." *Id*. at 175. Knowlton cites transcribed police interviews with the witnesses and references testimony at trial, Doc. 26, at 30–32, but neither of these items show that any rage regarding Knowlton's children was "reignited" in Knowlton just before his confrontation with McBride. "Past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." *State v. Ortiz*, No. 2015CA00098, 2016 WL 530659, at *8 (Ohio Ct. App. Feb. 1, 2016) (citing *State v. Huertas*, 553 N.E.2d 1058, 1068–1069 (Ohio 1990) and *State v. Pierce*, 414 N.E.2d 1038 (Ohio 1980)).

Knowlton points out that the Ohio court of appeals found that he entered into "mutual combat" with McBride, which "alone would establish serious provocation." *Id*. at 29. But the Ohio court of appeals explained that "mutual combat has not been found applicable where," as here, "both parties were not engaging in a fight while armed with deadly weapons." Doc. 15-1, at 175. The court noted that the facts "demonstrated McBride did not have his weapon on

---

[10]    In his affidavit, Knowlton concedes that his first "concern" about McBride's interactions with Knowlton's children occurred in late June 2021, about a month before the shooting incident. Doc. 25-1, at 1–3.

him during the altercation." *Id*. Knowlton has not in his Petition or Traverse challenged this finding by the Ohio court of appeals.

In his motion to expand the record, Knowlton asserts that he can show that "McBride possessed a firearm when Knowlton shot him." Doc. 25, at 2. In support, he cites McBride's transcribed police interview, which he attached to his motion. *Id*. But because the Ohio court of appeals adjudicated this claim on the merits, the Court is limited to the evidence that was presented to the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) (citing 28 U.S.C. § 2254(e)(2)). And Knowlton didn't present McBride's transcript in his Rule 26(B) application to reopen, so the Court can't consider it. *See Pinholster*, 563 U.S. at 186.

Even so, McBride's transcribed police interview doesn't show that McBride "possessed a firearm when Knowlton shot him"; it indicates otherwise. *See* Doc. 25-2, at 5, 9–12. So even if the Court did consider this evidence, Knowlton hasn't shown that there was any evidence, let alone sufficient evidence, of *serious provocation* to warrant an inferior-degree jury instruction. *See also, e.g., State v. Murray*, 2019 WL 7670102, at *7 (Ohio Ct. App. Dec. 30, 2029) (finding that the court did not err by not giving an aggravated-assault instruction on a felonious-assault charge; "[a]n instruction on a lesser-included offense is not warranted every time 'some evidence' is presented to support the lesser offense.") (citing *State v. Shane*, 590 N.E.2d 272, 275 (1992)). And because Knowlton hasn't shown that the Ohio court of

appeals' decision on this issue was unreasonable, he hasn't shown that the appellate court's rejection of his ineffective-assistance-of-appellate-counsel claim for failing to raise on direct appeal this trial-court-error claim was unreasonable. *See Jones*, 463 U.S. at 750–54 (Appellate counsel is not obligated to advance every possible argument on appeal); *Greer*, 264 F.3d at 676 (counsel is not ineffective for failing to raise an issue that lacks merit; "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

> 2. *Appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim for trial counsel's failure to do fourteen things.*

In his petition, Knowlton argues that appellate counsel was ineffective for failing to raise on direct appeal an ineffective-assistance-of-counsel claim for trial counsel's failure to do fourteen things. Doc. 1, at 32–33.

> a. *Six of the fourteen items are procedurally defaulted*

In his Rule 26(B) application to reopen, Knowlton only listed the first eight of the fourteen things that he argues that trial counsel should have done. Doc. 15-1, at 121. This means that the remaining six items that Knowlton added to his petition, Doc. 1, at 33, ¶¶(i)–(n), are procedurally defaulted.[11] *See*

---

[11] The added six items are: "[f]ailed to admit into evidence the transcribed police interviews of Justin Nemergut and Scott Lindsay"; "[f]ailed to object to the prosecution witness bolstering"; "[f]ailed to fully investigate this case"; "[f]ailed to interview potential witness (State or Defense)"; "failing to investigate a second firearm recovered near the crime scene"; "failed to request mistrial after the State's witnesses were identified conversing prior to and during testimony"; and "[c]umulative effect of trial counsel's errors." Doc. 1, at 33.

*Wong v. Money*, 142 F.3d 313, 321–22 (6th Cir. 1998) (ineffective assistance of counsel claim based on different reasons than those alleged in state court is procedurally defaulted).

Knowlton asserts that he had asked appellate counsel to raise certain claims. Doc. 26, at 150. To the extent that this could be construed as cause to excuse his procedural default, it would fail because the claims that he asked appellate counsel to raise did not include the six procedurally defaulted claims. *See* Doc. 21, at 291 (Knowlton's proposed direct-appeal brief that he states he sent to appellate counsel).

Elsewhere in his Traverse, Knowlton complains that the 10-page brief-limit for Rule 26(B) applications to reopen limited his ability to develop the state court record for his claims. Doc. 25 at 67. But he hasn't shown that this prevented him from raising these procedurally defaulted issues. *See Seymour v. Walker*, 224 F.3d 542, 551 (6th Cir. 2000) ("[T]he [state-court's] page limit [rule] 'merely limited the manner in which [Seymour] could present [her] arguments; it did not wholly prevent [her] from presenting them.'"). Indeed, the ten-page limit is "exclusive of affidavits and parts of the record," Ohio App. R. 26(B)(4), which Knowlton could have, and did, include in his application, *see* Doc. 15-1, at 127–71. Knowlton has not shown cause to excuse the procedural default of these six ineffective-assistance-of-appellate-counsel claims.

Knowlton asserts that he can show actual innocence to excuse any procedural defaults. Doc. 26, at 8. He contends that his actual innocence is

32

based on Ohio's self-defense law, "which renders his conduct non-criminal." *Id.* at 9. But "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). And "[t]he Sixth Circuit has consistently determined that defenses based on justification or excuse relate to legal innocence, not factual innocence." *Taylor v. Huss*, No. 1:20-cv-1233, 2024 WL 4163376, at *7 (W.D. Mich. Sept. 12, 2024) (collecting cases), *certificate of appealability denied*, 2025 WL 2743905 (6th Cir. Apr. 11, 2025); *see Bushner v. Bracy*, No. 17-3553, 2017 WL 9480312, at *3 (6th Cir. Dec. 11, 2017) ("Bushner's claim that he shot the victim in self-defense … goes to his legal, rather than factual, innocence."). Knowlton argues that the law described above holding that self-defense is legal, not factual, innocence is "in conflict with other districts." Doc. 26, at 9-10 (citing cases). But none of the cases Knowlton cites are from the Sixth Circuit, and the cases within the Sixth Circuit are more persuasive.[12] Knowlton writes that "Ohio's self-defense laws

---

[12]     *Taylor v. Huss* cited the following cases in support:

*Fuller v. Morrison*, No. 21-2704, 2022 WL 2719644, at *2 (6th Cir. Mar. 25, 2022) (concluding that an attack on a conviction based on the petitioner's mental health diagnoses and their impact on intent did not amount to a claim of factual innocence); *Arellano v. Howard*, No. 21-1024, 2021 WL 5499487, at *4 (6th Cir. Aug. 23, 2021) (concluding that a petitioner's challenge to a conviction for shooting her husband under a claim of legal justification relates to "legal" innocence, not factual innocence); *Bushner v. Bracy*, 17-3553, 2017 WL 9480312, at *3 (6th Cir. Dec. 11, 2017) (concluding that a claim of self-defense—which is a claim of justification—"goes to [the petitioner's] legal, rather than factual, innocence"); *Stewart v. Harry*, 17-1494, 2017 WL 9249946, at *2 (6th Cir. Nov. 21, 2017) (concluding that it was beyond debate that a claim of innocence based on self-defense is a claim of legal innocence, not factual innocence); *Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, at *8 (6th

have recently changed and continue to evolve," Doc. 26, at 10, but doesn't explain why the changes in Ohio law should necessitate in change in the determination of whether a self-defense claim goes to actual innocence.

In any event, in order to show that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier*, 477 U.S. 478, 496 (1986), Knowlton must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *see Schlup v. Delo*, 513 U.S. 298, 324 (1995). In support of his actual innocence claim, Knowlton rehashes the testimony and evidence presented at trial and provides his interpretation of events. *Id.* at 11–28. This is not new reliable evidence that was not presented at trial. *See Schlup*, 513 U.S. at 324. In his motion to expand the record, Knowlton says that the transcribed police interview of McBride is "essential" to his actual innocence claim because it shows that "McBride possessed a firearm when Knowlton shot him." Doc. 25, at 2. But McBride's transcribed interview does not show this. *See* Doc. 25-2, at 5, 7, 9–12 (McBride stating that he arrived at the scene with his gun in his waistband, and before walking towards Knowlton he pulled the

---

Cir. Nov. 30, 2016) (same); *Harvey v. Jones*, 179 F. App'x 294, 298–99 (6th Cir. 2006) (concluding that the petitioner's claim of justification rested upon legal innocence, not factual innocence and citing cases).

2024 WL 4163376, at *7.

gun out and placed it on his friend's motorcycle). This is the same testimony that McBride gave at trial. *See* Doc. 15-2, at 138. Knowlton's self-serving affidavit recounting events differently from the accounts of others at trial, Doc. 25-1, is not sufficient. *See McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (commenting that a self-serving affidavit is not sufficient evidence to show actual innocence).

Knowlton speculates that the private investigator hired by trial counsel, Tom Pavlish, was not actually hired and identifies a letter in which Pavlish responded to Knowlton's inquiry and stated, "your file has been purged. I do not have any material on your case." Doc. 25, at 2; Doc. 24-4. Knowlton also cites a letter from his trial counsel stating that the public defender's office "will not provide you with any Affidavit regarding Mr. Pavlish's investigation." Doc. 25, at 3; Doc. 25-5. These items do not show actual innocence. Finally, Knowlton claims that McBride's medical records, which Knowlton does not have and which he has never seen, will show that he did not shoot McBride in the back. Doc. 25, at 3–4. Knowlton's speculation as to what McBride's medical records show is not evidence of actual innocence.

### b. *The remaining eight items fail on the merits*

This leaves the remaining eight items Knowlton listed in his petition which, he claims, show trial counsel's ineffectiveness that appellate counsel failed to raise. These items are as follows:

> (a) Failing to request the jury instruction for a lesser included/ inferior offense of aggravated assault for

felonious assault when at trial, evidence of provocation was present. And failing to object to the jury instructions.

(b) Failure to object to hearsay witness testimony of bullet entry and exit wounds when no medical/forensic/expert testimony or evidence was presented.

(c) Failed to ensure defense witness Thomas Knox was properly served by subpoena or deposition prior to trial.

(d) Failure to request continuance to ensure defense witness was present for trial when subpoena return service was not filed with the court.

(e) Failed to consistently object to prosecutor's questions and comments regarding defendant's Fifth Amendment right to remain silent and other improper comments.

(f) Failed to provide or allow defendant to review Transcribed Recorded Police Interviews before trial, and photos which were provided with discovery.

(g) Failed to object to evidence admitted without proper authentication.

(h) Failed to subpoena/investigate victim's medical records.

Doc. 1, at 23–33, Doc. 15-1, at 121. The Ohio court of appeals considered and rejected these claims as follows:

> In his second alleged error, Knowlton raises various complaints with representation by trial counsel. First, Knowlton argues that trial counsel erred by failing to object to "hearsay witness testimony" regarding the bullet entry and exit wounds in the absence of expert testimony. Knowlton, however, references McBride's and Lindsay's testimony describing the gunshot wounds suffered by McBride. This is not hearsay but admissible testimony regarding their observations.

> To the extent that Knowlton contends counsel should have presented expert testimony relating to the nature of the wounds and whether the injuries supported his claim of self-defense, we will not

36

second-guess trial counsel as to this issue. There was consistent testimony from multiple witnesses regarding the details of where the shots hit and the direction in which Knowlton was firing. It is reasonable to conclude that counsel determined there was no relevant expert testimony available or that such testimony may contradict the self-defense claim. "[I]t is generally a legitimate trial strategy for defense counsel not to present expert testimony * * * because such an expert might uncover evidence that further inculpates the defendant." (Citation omitted.) *State v. Craig*, 11th Dist. Lake No. 2021-L-023, 2022-Ohio-2200, ¶ 14.

We also find no merit to Knowlton's claim that counsel was ineffective for the failure to seek admission of medical records. He does not demonstrate how such records would have proven he acted in self-defense. Courts have declined to second-guess trial counsel's strategic decision in relation to the admission of medical records where the defendant failed to demonstrate "why the records were necessary or how the result of the trial was unreliable or unfair because the records were not admitted." *State v. Vales*, 2020-Ohio-245, 143 N.E.3d 577, ¶ 43 (5th Dist.).

Knowlton next argues that trial counsel was ineffective by failing to ensure a defense witness was subpoenaed and to seek a continuance to allow his appearance. The record does not establish what testimony this witness would have offered or how it would have impacted the defense. "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of [a] showing that [the] testimony * * * would have assisted the defense." (Citation omitted.) *State v. Heald*, 11th Dist. Lake Nos. 2021-L-111 and 2021-L-112, 2022-Ohio-2282, ¶ 30.

Knowlton raises other arguments which he fails to support with additional argumentation: counsel did not provide certain evidence to him or object to evidence that was not authenticated. Pursuant to

37

> App.R. 26(B)(2)(d), the defendant must indicate the
> basis for allegations of how counsel was deficient as
> well as demonstrate the manner in which this
> prejudicially affected the outcome of the appeal." In
> the absence of argumentation in support of these
> alleged errors, we decline to find they have merit.

Doc. 15-1, at 176–77. The Ohio court of appeals had rejected Knowlton's
ineffectiveness claim related to the lesser-degree jury instruction when it
rejected Knowlton's claim of trial-court error, *id*. at 175, discussed above. And
for the same reasons discussed above, Knowlton's appellate-counsel-
ineffectiveness claim for failing to raise an ineffectiveness-of-trial-counsel
claim for failing to object to the lack of a lesser-degree instruction or to request
such an instruction fails on the merits.

As for Knowlton's claim regarding trial counsel's failure to object to
"hearsay witness testimony of bullet entry and exit wounds when no
medical/forensic/expert testimony or evidence was presented," Knowlton
continues to insist, with no evidence in support, that McBride's medical records
would have shown that he was not shot in the back. Doc. 25, at 111. Knowlton
argues that only two shots were fired, and that the shot that hit McBride in
the shoulder exited his back. *Id*. But Knowlton has not shown that the Ohio
court of appeals' decision on this issue was unreasonable. He has not shown
that the witness testimony was hearsay such that counsel should have objected
to it. And the Ohio court of appeals' statement that counsel's failure to present
expert testimony on the gunshot wounds is legitimate trial strategy not to be
second-guessed, Doc. 15-1, at 176, is not an unreasonable application of

38

Supreme Court precedent. *See, e.g., Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The Supreme Court has never reached the specific question[] … [of] how hard" an attorney must try to obtain an expert); *see Dovala v. Baldauf*, No. 20-4222, 2021 WL 3732338, at \*7 (6th Cir. Aug. 24, 2021) ("*Strickland* does not require a defense attorney to present an expert," and "the [Supreme] Court endorsed … an alternative to expert-testimony: cross-examination, 'the greatest legal engine ever invented for the discovery of truth'") (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).

Next, and relatedly, Knowlton argues that trial counsel was ineffective for failing to "subpoena/investigate victim's medical records." Doc. 26, at 112, 119. He claims that this evidence, which he does not have and has not seen, would have shown that McBride was shot twice, not three times as McBride had testified. *Id.* at 112, 119–20; Doc. 15-2, at 140–41. But Knowlton has not shown that this is so—he only speculates what the medical records would have shown. In fact, the evidence that Knowlton seeks to include in the record shows that trial counsel had seen the medical records and that they showed that McBride was shot three times. *See* Doc. 25-5 (letter from the public defender's office to Knowlton stating, "We cannot provide you with copies of medical records for Mr. McBride due to HIPAA regulations. However, we reviewed the medical records and can confirm Mr. McBride suffered three (3) gunshot wounds."). Even Knowlton himself did not state in his affidavit, which he also seeks to include in the record, that he only shot McBride twice and not three

times. *See* Doc. 25-1. All told, Knowlton has not shown that it was unreasonable for the Ohio court of appeals to defer to trial counsel's strategic decisions. *See Strickland*, 466 U.S. at 689 (a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment."); *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons Pinholster's counsel may have had for proceeding as they did'") (citation omitted).

Knowlton claims that trial counsel was ineffective for "[f]ail[ing] to ensure defense witness Thomas Knox was properly served by subpoena or deposition prior to trial" and "to request continuance to ensure defense witness was present for trial." Doc. 1, at 32. Knowlton cites cases which found that trial counsel was ineffective for failing to pursue witnesses at trial, but his summary of these cases shows that they involved witnesses who would have corroborated the defendant's story or provided exculpatory testimony. Doc. 26, at 113–14. Here, as the Ohio court of appeals observed, Knowlton does not say what Knox would have said. Doc. 15-1, at 177. So Knowlton has not shown that trial counsel was ineffective for failing to pursue Knox as a witness. And he hasn't shown that the Ohio court of appeals' finding was contrary to or represents an unreasonable application of Supreme Court precedent. Doc. 15-1, at 177; *see Johnson v. Sloan*, No. 5:18-cv-1846, 2020 WL 9813446, at *11 (N.D. Ohio Jan. 15, 2020) ("The decisions of 'whether to call a witness and how to conduct a

witness' testimony are classic questions of trial strategy.'") (quoting *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012)), *report and recommendation adopted*, 2021 WL 2187965 (N.D. Ohio May 28, 2021); *see Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [the uncalled witnesses] would have offered specific favorable testimony, Tinsley cannot show prejudice from counsel's strategy recommendation not to introduce this evidence.").

Knowlton also complains that trial counsel "[f]ailed to provide or allow defendant to review Transcribed Recorded Police Interviews … and photos" "before trial" and "[f]ailed to object to evidence admitted without proper authentication." Doc. 1, at 31. The Ohio court of appeals summarily rejected these claims because Knowlton failed to provide argument in support. Doc. 15-1, at 177. In his Traverse, Knowlton argues in support of these claims. Doc. 26, at 117–19. But he hasn't shown that these claims have merit. His assertion that trial counsel failed to object to the messages as not having been authenticated and that there was "no showing that … Knowlton was actually involved in the conversation," *id.* at 118–19, fails because Knowlton has not claimed that he wasn't involved in the conversation. Indeed, Knowlton relied at trial—and in his habeas petition—on these text messages to support his self-defense theory. *See, e.g.*, Doc. 15-2, at 349, 380–81; Doc. 26, at 29. Knowlton complains that counsel failed to timely provide him with transcripts of police interviews. Doc. 26, at 117–18. But he hasn't shown that counsel was

ineffective in these matters, and he hasn't explained why having seen the police-interview transcripts would have changed anything.

Finally, the Ohio court of appeals did not expressly rule on Knowlton's claim that appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for failing to "consistently object to prosecutor's questions and comments regarding defendant's Fifth Amendment right to remain silent and other improper comments." Doc. 1, at 32, ¶(e). In his Rule 26(B) application to reopen, Knowlton didn't identify what the comments were and when they occurred; he only wrote, "although defense counsel did object to one comment regarding defendants right to remain silent, several other instances before and after were not objected to." Doc. 15-1, at 122. This vague reference can reasonably be read into the Ohio court of appeals' final paragraph in which it rejected "other arguments" Knowlton raised "which he fails to support with additional argumentation." Doc. 15-1, at 177. Moreover, the Ohio court of appeals considered and rejected Knowlton's claim that appellate counsel was ineffective for failing to raise on direct appeal issues of prosecutorial misconduct, which I discuss below. And for the same reasons, I recommend to the Court that the Ohio court of appeals' finding on this issue was not unreasonable, such that appellate counsel could not be said to have been ineffective for failing to raise an ineffectiveness-of-trial-counsel claim for failing to object to the prosecutor's comments. *See Greer*, 264 F.3d at 676 ("[B]y

definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

### 3. *Appellate counsel's failure to raise a prosecutorial misconduct claim based on eight things*

In his petition, Knowlton argues that appellate counsel was ineffective for failing to raise on direct appeal a prosecutorial misconduct claim for eight things that the prosecutor did or said, including that the prosecution committed a *Brady* violation[13] by withholding evidence. Doc. 1, at 33. But in his Rule 26(B) application to reopen, Knowlton did not claim that the prosecutor committed a *Brady* violation. Doc. 15-1, at 122–25. So Knowlton has procedurally defaulted any *Brady*-based ineffective assistance claim. *See McMeans*, 228 F.3d at 681 (A claim is only considered fairly presented when the petitioner asserts both the factual and legal bases for that claim to the state courts). Nor did Knowlton claim in his Rule 26(B) application that the prosecutor committed misconduct when he "deliberately elicited, and then failed to correct, false and misleading testimony from the State's key witnesses" about whether McBride handed the gun to Lindsay, Doc. 26, at 136–40, and allowed McBride to testify that he was shot three times, including once in the back, *id*. at 141–45. Knowlton also hadn't raised a "Golden Rule" claim.[14]

---

[13]     *See Brady v. Maryland*, 373 U.S. 83 (1963).

[14]     A "Golden Rule" "violation occurs when the prosecutor 'urges jurors to identify individually with the victims with comments like "it could have been you" the defendant [harmed] or "'it could have been your children.'"" *United States v. Al-Maliki*, 787 F.3d 784, 795 (6th Cir. 2015) (citation omitted).

*Id.* at 147; *see* Doc. 15-1, at 122–25. These claims, too, are procedurally defaulted. *See McMeans*, 228 F.3d at 681.

Knowlton has not alleged cause to excuse this procedural default. To the extent he claims that the 10-page brief-limit for Rule 26(B) applications to reopen limited his ability to develop the state court record for his claims, Doc. 25 at 67, such an argument would fail, *see Seymour*, 224 F.3d at 551; Ohio App. R. 26(B)(4). And as discussed above, Knowlton has not shown actual innocence to excuse the procedural default.

This leaves the ineffective-assistance-of-appellate-counsel claims for failing to raise on direct appeal instances of prosecutorial misconduct that Knowlton did raise. When reviewing a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Ohio court of appeals considered Knowlton's claims as follows:

> In his third alleged error, Knowlton argues that appellate counsel should have raised various issues relating to prosecutorial misconduct. "In a claim of prosecutorial misconduct, we determine (1) whether the prosecutor's remarks were improper, and if so, (2) whether the remarks prejudicially affected the appellant's substantial rights." *State v. Nixon*, 11th Dist. Portage No. 2023-P-0001, 2023-Ohio-4871, ¶

44

154. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." (Citation omitted.) *Id.*

First, Knowlton asserts that the State incorrectly indicated McBride had a concealed carry permit while he testified to the contrary. The prosecutor was mistaken in this assertion but McBride's testimony clarified this issue. Further, there is nothing to indicate this mistake impacted the conviction. McBride's possession of a CCW license is inconsequential to the circumstances of the shooting and Knowlton's claim that he acted in self-defense.

Knowlton also argues that the State improperly injected its opinion into closing argument by comparing the conflict between the two men to a junior high fight. He fails to demonstrate how this comment constituted misconduct. Similarly, as to the prosecution's statement that the record proved beyond a reasonable doubt that Knowlton did not act in self-defense, Knowlton does not cite authority demonstrating how this was improper. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 160 (prosecution's statement that the evidence proved the offense beyond a reasonable doubt was not improper).

Knowlton also takes issue with the State's comments about a witness, Lindsay, testifying honestly. It has been held that "[c]ommenting on the truthfulness of a witness is not proper." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 45 (8th Dist.). The statements, viewed in context, indicated that Lindsay was honest in admitting his past felony charges in relation to his desire to not be found in possession of a firearm. Even presuming the prosecutor improperly spoke to Lindsay's honesty in this regard, the record does not indicate the statements impacted the outcome of the trial, as they related to the recovery of the gun rather than the facts surrounding the incident itself

45

and whether Knowlton acted in self-defense. *See State v. Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142, ¶ 67 (the defendant's substantial rights were not prejudicially affected by the prosecutor's comments when the jury would have found him guilty absent such remarks).

Knowlton also takes issue with the prosecutor's statement, in closing argument, that, if the law allowed Knowlton to claim self-defense merely because McBride brough a gun to the location of the shooting, it would lead to "a whole bunch of shootings." An objection to this comment was sustained. Again, Knowlton does not advance an argument that demonstrates this impacted his substantial rights. The jury was instructed correctly on the law relating to self-defense and, as noted in this court's opinion, the facts supported the jury's conclusion that Knowlton did not demonstrate self-defense.

Knowlton also argues that the prosecutor misled the jury by inquiring of a witness regarding only certain text messages between McBride and Knowlton. There is nothing to indicate that this constituted misconduct. Although there were some messages in the exhibit that may not have been referenced by the prosecutor, these messages were not relevant to the dispute leading to the assault and the State was not required to ask questions to the witnesses regarding every message.

Finally, Knowlton argues that the prosecutor committed misconduct by making comments about his failure to speak to police or give testimony. The prosecutor made comments about the difficulty police had in getting in contact with Knowlton and that they did not speak with him. The prosecutor further stated that there was a lack of evidence to explain why Knowlton shot McBride and that no one could testify as to Knowlton's thoughts or feelings. It was well-settled that a prosecutor may not comment on a defendant's failure to testify. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d

106 (1965). To the extent that the prosecution commented on Knowlton's failure to offer evidence to prove intent and/or self-defense, "the prosecution is entitled to comment on defendant's failure to offer evidence." *State v. Vaughn*, 11th Dist. Ashtabula No. 2018-A-0045, 2019-Ohio-268, ¶ 37. To the extent that the prosecutor's comments related to Knowlton's failure to give a statement to police and/or failure to testify, the record demonstrates that the court properly instructed the jury not to consider this. It instructed the jury, during the testimony, that it "will disregard any statement made by the prosecuting attorney regarding the Defendant communicating with or speaking with law enforcement, and you will not consider that for any purpose whatsoever" and, further, during closing arguments, that "the fact that the Defendant did not testify must not be considered for any purpose." Given the nature of the comments and the curative instructions, we do not find that the statements prejudiced Knowlton or resulted in his conviction. *See State v. Fitzgerald*, 11th Dist. Portage No. 2003-L-084, 2004-Ohio-6173, ¶ 50 ("the alacrity with which the court issued its curative instruction functioned to further lessen the possibility of prejudice"); *State v. Smith*, 2d Dist. Montgomery No. 29597, 2023-Ohio-4565, ¶ 139 ("[w]e presume that the jury followed" instructions not to consider the defendant's failure to testify for any purpose).

For the foregoing reasons, Knowlton's Application to Reopen Appeal is overruled.

Doc. 15-1, at 177–80.

Knowlton reiterates his arguments in support of this claim, *see* Doc. 26, 127–49, 153–54, but he has not shown that any portion of the Ohio court of appeals' decision on this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." 28 U.S.C. § 2254(d)(1). To start, the Ohio court of appeals correctly considered the prosecutor's remarks within the context of the trial. Doc. 15-1, at 177–80; *see Stermer v. Warren*, 959 F.3d 704, 726 (6th Cir. 2020) ("the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error") (quoting *United States v. Young*, 470 U.S. 1, 12 (1985)).

Knowlton claims that the prosecutor elicited misleading testimony because (1) McBride did not in fact have a concealed-carry permit and (2) he didn't review with McBride all of the text messages sent between Knowlton and McBride before the shooting. Doc. 26, at 128, 129. The Ohio court of appeals explained that the prosecutor did not act improperly and, in any event, these items were irrelevant. Knowlton hasn't alleged—let alone shown—that that Ohio court of appeals' decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). So, too, with Knowlton's complaint that the prosecutor during closing argument likened the fight to boys in junior high school, Doc. 26, at 128; Doc. 15-1, at 178, and the prosecutor's comments about the self-defense law, Doc. 26, at 128; Doc. 15-1, at 179. Knowlton argues that the prosecutor bolstered Lindsay's testimony when he told the jury that Lindsay was "honest." Doc. 26, at 130. But he doesn't challenge the Ohio court of appeals' finding that this statement, taken in context, was "related to the recovery of the gun rather

than the facts surrounding the incident itself and whether Knowlton acted in self-defense." Doc. 15-1, at 178; Doc. 15-2, at 372.

Knowlton complains that the prosecutor elicited police officers' testimony about the officers' unsuccessful attempts after the shooting to locate Knowlton to speak to him or investigate. Doc. 26, at 132–33; Doc. 15-2, at 291, 312. He cites Officer Burns's testimony that Knowlton fled from the police. Doc. 26, at 132. He also cites Officer Allen's testimony that the day after the shooting, she visited Knowlton's father's house to say that "it would be in [Knowlton's] best interest to contact us and … tell us his side of the story." *Id*. *see* Doc. 15-2, at 291. The prosecutor asked Officer Allen, "And to the best of your knowledge has that ever happened?" to which Officer Allen answered, "No." *Id*. But the Supreme Court has not held that a prosecutor is barred from commenting at trial on pre-arrest, pre-*Miranda*, non-custodial silence. *See, e.g., Salinas v. Texas*, 570 U.S. 178, 183 (2013); *Jenkins v. Anderson*, 447 U.S. 231, 236 n.2 (1980).

Knowlton points out that, during closing argument, the prosecutor told the jury that "Over the ensuing year and a half, [Officer] Allen told us, she even went to Shane Knowlton's father's house …. Said hey, we really need to talk to Shane. We'd like to get his side of the story." Doc. 15-2, at 375. Knowlton asserts that he "was arrested on July 17, 2022, which is less than one year from July 23, 2021," the date of the shooting. Doc. 26, at 133. "Therefore," Knowlton contends, "the State argued [he] did not speak with law enforcement while in

49

custody." *Id*. Even if the prosecutor's comment, which did not explicitly reference Knowlton's purported post-arrest silence, could be construed as a comment on Knowlton's presumed post-arrest silence, Knowlton's attorney promptly objected and the trial court sustained the objection and immediately provided to the jury a specific curative instruction. Doc. 15-2, at 375–77 (trial court's immediate instruction: "Ladies and gentlemen of jury, you will disregard any statement made by the prosecuting attorney regarding the Defendant communicating with or speaking with law enforcement, and you will not consider that for any purpose whatsoever."). And later, the court again provided another curative instruction to the jury. Doc. 15-2, at 391 ("statements that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them."); *see Greer v. Miller*, 483 U.S. 756, 766 (1987). ("The sequence of events in this case—a single question, an immediate objection, and two curative instructions—clearly indicates that the prosecutor's improper question did not violate Miller's due process rights.") (footnote omitted). So even if the prosecutor's statement could be said to have commented on Knowlton's silence "while in custody," the Ohio court of appeals' finding on this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

Knowlton contends that the prosecutor's comments about the lack of evidence to show that Knowlton acted in self-defense violated his right to remain silent. Doc. 26, at 134. But the Ohio court of appeals explained that "the prosecution is entitled to comment on defendant's failure to offer evidence." Doc. 15-1, at 180 (citing *State v. Vaughn*, No. 2018-A-0045, 2019 WL 355168, at *4 (Ohio Ct. App. Jan. 28, 2019)); *see also State v. Collins*, 733 N.E.2d 1118, 1122 (Ohio 2000)). Knowlton has not shown that the Ohio court of appeals' finding "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

All told, Knowlton has not in ground five overcome the "doubly deferential" standard of review by showing that the Ohio court of appeals' application of *Strickland* when reviewing Knowlton's ineffective-assistance-of-appellate-counsel claims was unreasonable. *See Pinholster*, 563 U.S. at 190.

### Grounds two and four are procedurally defaulted

In ground two, Knowlton argues that the trial court erred when it failed to instruct the jury on an inferior offence. Doc. 1, at 8. Ground four is a prosecutorial misconduct claim based on comments the State made at trial. *Id.* at 29–31. The Warden argues that these grounds are procedurally defaulted because Knowlton should have, but did not, raise them on direct appeal. Doc. 15, at 31.

Grounds two and four are based on the trial court record and should have been raised on direct appeal. *See Buell*, 274 F.3d at 349. Because Knowlton did not raise these claims on direct appeal, they are procedurally defaulted. *See id*. ("a petitioner's failure to raise his claims in Ohio courts is an adequate and independent state law ground for upholding the petitioner's conviction and sentence.").

Knowlton concedes that he did not give the state courts an opportunity to evaluate these claims. Doc. 26, at 64. He points out, however, that he filed an Ohio Appellate Rule 26(B) application to reopen, *id*., in which he asserted that appellate counsel was ineffective for failing to raise, on direct appeal, these claims, Doc. 15-1, at 173. But "bringing an ineffective assistance claim in state court based on counsel's failure to raise [on appeal] an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).

Moreover, while ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, it can only do so if the ineffective-assistance-of-appellate-counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Knowlton must show that his appellate counsel was objectively unreasonable for not raising these claims on direct appeal and a reasonable probability that, but for his counsel's

unreasonable failure to do so, Knowlton would have prevailed on appeal. *See Robbins*, 528 U.S. at 285–86. The Court conducts de novo review of an ineffective-assistance-of-counsel claim when determining whether it can serve as cause to excuse a procedural default. *See Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009)).

For all of the reasons explained above in the Court's evaluation of ground five, and under de novo review, Knowlton has not shown that appellate counsel was objectively unreasonable for not raising these claims on direct appeal and a reasonable probability that, but for his counsel's unreasonable failure to do so, Knowlton would have prevailed on appeal. *See Robbins*, 528 U.S. at 285.

### Ground three is procedurally defaulted

Ground three is an ineffective-assistance-of-trial-counsel claim. Doc. 1, at 9. Knowlton lists fourteen ways in which he believes that trial counsel was ineffective. *Id.* at 26–29. He raised all but two of these claims in his post-conviction petition. *See* Doc. 15-1, at 245–51, 269–70, 276 (listing all but trial counsel's failure to object to unauthenticated text messages and to the prosecutor's witness-bolstering). And he failed to raise two of his claims on appeal to the Ohio court of appeals. *See id.* at 321–26 (listing all but trial counsel's failure to object to the prosecutor's witness-bolstering and for counsel's failure to investigate a second firearm). So these three sub-claims are

procedurally defaulted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity'" to evaluate a claim, "the prisoner must 'fairly present' [the] claim in each appropriate state court"); *Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("[I]ssues … presented … in a post-conviction relief petition" must be "presented for review by the Court of Appeals and Ohio Supreme Court.").

Even worse for Knowlton, he didn't appeal the Ohio court of appeals' decision affirming the trial court's denial of his post-conviction petition to the Ohio Supreme Court. So he has procedurally defaulted all of the claims that he raised in his post-conviction petition. *See id*; *see Baldwin*, 541 U.S. at 29.

To the extent that Knowlton argues that he also raised the ground-three claims in his Rule 26(B) application to reopen as a reason that appellate counsel was ineffective, Doc. 26, at 66–67, such an argument would fail. *See Davie*, 547 F.3d at 312 ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise [on appeal] an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'") (citation omitted).

Knowlton argues that he didn't appeal to the Ohio Supreme Court because to do so would have been futile. Doc. 26, at 65. But "perceived futility" cannot constitute cause to excuse a procedural default. *See Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 (6th Cir. 2010) (citing, among other cases, *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Simply put, Knowlton has not

shown cause to excuse his procedural default. And as explained above, he has not shown actual innocence to overcome the procedural bar. Ground three is procedurally defaulted.

**Conclusion**

For the reasons set forth above, I recommend that Knowlton's Petition be dismissed in part and denied in part. Knowlton's Motion to expand the record, Doc. 25, is denied.

Dated: November 13, 2025

<u>/s/ James E. Grimes Jr.</u>
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).