## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SHANE PATRICK KNOWLTON, | ) | CASE NO. 1:25-cv-1088 |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JAMES E. GRIMES JR. |
| WARDEN JOSSETTE OKEREKE, | ) | |
| | ) | **OPINION AND ORDER ADOPTING** |
| Respondent. | ) | **MAGISTRATE'S REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |

Pending before the Court is Petitioner Shane Knowlton's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus ("Petition") (ECF No. 1). Magistrate Judge James E. Grimes Jr. issued a Report and Recommendation ("R&R") on November 13, 2025, recommending that the Court dismiss in part and deny in part the Petition. (ECF No. 28). Petitioner filed objections to the R&R. (ECF No. 31). Upon consideration of Petitioner's objections, the Court **ADOPTS** the R&R in its entirety, **DISMISSES IN PART** and **DENIES IN PART** the Petition, and **CLOSES** this action.

## I. BACKGROUND

Magistrate Judge Grimes's R&R provides a thorough account of the events preceding it. The Court **ADOPTS** Magistrate Judge Grimes's findings of fact in the sections titled "Summary of facts" and "Procedural background." (ECF No. 28, PageID #1567–58). On November 13, 2025, Magistrate Judge Grimes issued an R&R recommending that the Court dismiss Ground One as non-cognizable, dismiss Grounds Two, Three, and Four as procedurally defaulted, dismiss Ground Five, in part, as procedurally defaulted, and deny the remainder of Ground Five on the merits. (*Id.* at PageID #1583–1621).

On January 20, 2026, Petitioner filed objections to the R&R.  (ECF No. 31).  First, Petitioner objects to the Magistrate Judge's conclusion that Petitioner cannot show actual innocence based on claims of self-defense to excuse the procedural defaults.  (*Id.* at PageID #1629–38).  Second, Petitioner objects to the Magistrate Judge's conclusion that Ground One is non-cognizable.  (*Id.* at PageID #1638–45).  He then objects to the Magistrate Judge's conclusion that he procedurally defaulted Grounds Two, Three, and Four.  (*Id.* at PageID #1645–77).  Finally, Petitioner objects to the Magistrate Judge's conclusion that Ground Five is partially procedurally defaulted and partially meritless.  (*Id.* at PageID #1677–82).

## II.     LEGAL STANDARD

### A.     R&R Objections

Under the Federal Magistrates Act, a district court must conduct a *de novo* review of those portions of the report and recommendation to which the parties have objected.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  Absent objection, a district court may adopt a report and recommendation without further review.  *See Peretz v. United States*, 501 U.S. 923, 939 (1991); *Thomas v. Arn*, 474 U.S. 140, 141–42 (1985).  Pursuant to Fed. R. Civ. Proc. 72(b)(3), a district judge:

> [M]ust determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. Proc. 72(b)(3).  An objection must address specific issues within the magistrate judge's report and recommendation.  *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  That means that a petitioner must direct "the district judge's attention to specific issues decided by the magistrate contrary to [the petitioner's] position."  *Ayers v. Bradshaw*, No. 3:07-cv-2663, 2008 U.S. Dist. LEXIS 27218, 2008 WL 906100, at *2 (N.D. Ohio, Mar. 31, 2008)

(quoting *Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997)); *see also Bulls v. Potter*, No. 5:16-cv-02095, 2020 U.S. Dist. LEXIS 30163, 2020 WL 870931, at *1 (N.D. Ohio Feb. 21, 2020) (providing that objections "must be specific in order to trigger the de novo review").

General objections are insufficient to meet the specificity requirement as objections "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)) (internal quotation marks omitted); *see also Howard*, 932 F.2d at 509 (providing that a general objection to a magistrate judge's report and recommendation "has the same effects as would a failure to object").  "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

**B.     AEDPA Deference**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (internal citation and quotation omitted).  Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. § 2254(d).

## III.  DISCUSSION

### A.  Actual Innocence Exception

In his traverse, Petitioner argued that any claims that were procedurally defaulted should be excused because he could demonstrate actual innocence (an exception to procedural default), as the evidence demonstrates he had acted in self-defense under Ohio law.  (ECF No. 26, PageID #1412–39).  Magistrate Judge Grimes concluded that Petitioner had not demonstrated actual innocence to excuse procedural default because: (i) self-defense goes to legal innocence and not factual innocence, and therefore does not qualify; (ii) Petitioner primarily rehashes testimony and evidence presented at trial, which does not qualify as new reliable evidence (a requirement for actual innocence); and (iii) the supposed "new evidence" relied on by Petitioner does not demonstrate actual innocence.  (ECF No. 28, PageID #1598–1601).  In his objections, Petitioner provides essentially the same arguments on actual innocence that he put forth in his traverse— rehashing evidence presented at trial and citing supposed newly discovered evidence the Magistrate Judge rejected.  (*Compare* ECF No. 31, PageID #1629–38, *with* ECF No. 26, PageID #1412–39).

As an initial matter, to the extent that this objection merely rehashes the arguments Petitioner raised in his traverse, the objection is improper and can be overruled solely on this basis. *See Aldrich*, 327 F. Supp. 2d at 747; *United States v. Bowers*, No. 06-7, 2017 U.S. Dist. LEXIS

212021, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017). Even so, the Court would also overrule this objection on the merits.

A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495–96; *see also Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial, that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324; *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citation omitted). In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. This standard is demanding, rarely satisfied, and applied only in extraordinary cases. *Schlup*, 513 U.S. at 321; *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005).

First, the Court agrees with the Magistrate Judge's conclusion that self-defense is an affirmative defense that goes to legal rather than factual innocence. The Sixth Circuit has consistently held that affirmative defenses related to justification or excuse, including self-defense, are claims of legal innocence, not factual innocence, and therefore do not establish a claim of actual innocence. *See, e.g.*, *Arellano v. Howard*, No. 21-1024, 2021 U.S. App. LEXIS 25300, 2021 WL 5499487, at *4 (6th Cir. Aug. 23, 2021) (holding that a petitioner's challenge to a conviction based on a theory of legal justification relates to legal innocence and not factual innocence); *Bushner v. Bracy*, No. 17-3553, 2017 LX 84309, at *7 (6th Cir. Dec. 11, 2017)

(holding that a claim of self-defense, which is a claim of legal justification, "goes to [the petitioner's] legal, rather than factual, innocence"); *Stewart v. Harry*, No. 17-1494, 2017 LX 45602, at \*5 (6th Cir. Nov. 21, 2017) (concluding that reasonable jurists could not debate that the district court correctly denied a claim of actual innocence based on a claim of self-defense); *Bacon v. Klee*, No. 15-2491, 2016 U.S. App. LEXIS 23441, at \*22–23 (6th Cir. Nov. 30, 2016) (same); *Harvey v. Jones*, 179 F. App'x 294, 298–99 (6th Cir. 2006) (concluding that the petitioner's claim of justification rested upon legal innocence, not factual innocence).  The Court adopts the view of this persuasive authority.

Second, even if a claim of self-defense could establish factual innocence, Petitioner does not identify or provide any new, reliable evidence of his actual innocence.  As noted by the Magistrate Judge, Petitioner primarily cites evidence and testimony that was provided at trial and simply argues why he believes that it demonstrates that he acted in self-defense.  This is not *new* evidence, which is needed to establish a claim of actual innocence.  As for the alleged newly discovered evidence cited by Petitioner, it also falls short.  The Court adopts the analysis provided by the Magistrate Judge, which Petitioner did not object to:

> In his motion to expand the record, Knowlton says that the transcribed police interview of McBride is "essential" to his actual innocence claim because it shows that "McBride possessed a firearm when Knowlton shot him." Doc. 25, at 2. But McBride's transcribed interview does not show this. See Doc. 25-2, at 5, 7, 9–12 (McBride stating that he arrived at the scene with his gun in his waistband, and before walking towards Knowlton he pulled the gun out and placed it on his friend's motorcycle). This is the same testimony that McBride gave at trial. See Doc. 15-2, at 138. Knowlton's self-serving affidavit recounting events differently from the accounts of others at trial, Doc. 25-1, is not sufficient. See McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir. 2007) (commenting that a self-serving affidavit is not sufficient evidence to show actual innocence).
>
> Knowlton speculates that the private investigator hired by trial counsel, Tom Pavlish, was not actually hired and identifies a letter in which Pavlish responded to Knowlton's inquiry and stated, "your file has been purged. I do not have any material on your case." Doc. 25, at 2; Doc. 24-4. Knowlton also cites a letter from

> his trial counsel stating that the public defender's office "will not provide you with any Affidavit regarding Mr. Pavlish's investigation." Doc. 25, at 3; Doc. 25-5. These items do not show actual innocence. Finally, Knowlton claims that McBride's medical records, which Knowlton does not have and which he has never seen, will show that he did not shoot McBride in the back. Doc. 25, at 3–4. Knowlton's speculation as to what McBride's medical records show is not evidence of actual innocence.

(ECF No. 28, PageID #1600–01).

In summation, Petitioner's objection is not only improper, but he has not established a viable claim for actual innocence.  Accordingly, the Court **OVERRULES** Petitioner's objections as to actual innocence.

### B.    Ground One

The Magistrate Judge found that Petitioner's Ground One claim (that his conviction was against the manifest weight of evidence due to his claim of self-defense) was non-cognizable and should be dismissed.  (ECF No. 28, PageID #1583–87).  Petitioner's objection does not address the issue of cognizability; instead, it presents a merits argument as to why there was insufficient evidence to sustain his conviction.  (ECF No. 31, PageID #1638–45).  Because Petitioner does not address the conclusion, reasoning, and grounds for dismissal put forward in the R&R with respect to Ground One, the Court **OVERRULES** Petitioner's objection as to dismissal of Ground One.

Alternatively, the Court would overrule Petitioner objection on the merits because the Court also finds that Petitioner's Ground One claim is non-cognizable.  First, it is well settled that claims concerning the manifest weight of evidence are not cognizable on federal habeas review because such a claim is wholly grounded in state law.  *See, e.g.*, *Thomas v. Taskila*, No. 23-1423, 2023 U.S. App. LEXIS 30660, at *17 (6th Cir. Nov. 16, 2023) ("Jurists of reason also would agree that a manifest-weight claim is not cognizable on federal habeas review because it is a state-law argument."); *Parker v. Fender*, No. 21-3363, 2021 U.S. App. LEXIS 27514, at *5–6 (6th Cir. Sept.

13, 2021) ("However, a claim that a conviction is against the manifest weight of the evidence rests solely on state law, and reasonable jurists would not debate the district court's conclusion that such a claim is not cognizable on federal habeas review."); *Jackson v. Noble*, No. 3:18-cv-113, 2020 U.S. Dist. LEXIS 250037, at *10 (N.D. Ohio Sept. 15, 2020) (collecting cases); *Myers v. Haviland*, No. 17-4220, 2018 U.S. App. LEXIS 38924, at *5 (6th Cir. Apr. 12, 2018).  Second, even if Petitioner's manifest weight claim were construed as a sufficiency of the evidence claim, it would still be considered non-cognizable because it is based on an affirmative defense (self-defense).  *See Woodmore v. Tanner*, No. 25-1085, 2025 LX 268383, at *7–8 (6th Cir. July 8, 2025); *Smith v. Smith*, No. 24-3251, 2024 U.S. App. LEXIS 16227, at *7–9 (6th Cir. July 2, 2024); *Hayes v. Brown*, No. 22-1527, 2023 U.S. App. LEXIS 530, at *6 (6th Cir. Jan. 10, 2023) ("Reasonable jurists therefore could not debate the district court's determination that Hayes's sufficiency challenge to a verdict that rejected self-defense (to the extent that he raised this challenge in his habeas petition) is not cognizable on habeas review."); *Booker v. Turner*, No. 3:14-cv-1025, 2015 U.S. Dist. LEXIS 188122, at *18–19 (N.D. Ohio Nov. 30, 2015), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 62536 (N.D. Ohio Apr. 24, 2017).

## C.    Ground Five[1]

In Ground Five, Petitioner raises claims for ineffective assistance of appellate counsel; specifically, he argues that his appellate counsel was ineffective for failing to raise the following claims on direct appeal: (i) the trial court erred in "failing to instruct the jury on aggravated assault, as a lesser included offense of felonious assault when evidence was present of serious provocation and actual sudden passion and fit of rage"; (ii) Petitioner received ineffective assistance of trial

---

[1] The Court is addressing Petitioner's objections out of order because the R&R's analysis as to Ground Five (ineffective assistance of appellate counsel) will impact the procedural default analysis of Grounds Two, Three, and Four.

counsel based on fourteen things; and (iii) eight instances of prosecutor misconduct.  (ECF No. 1, PageID #32–33).  Mirroring the approach from the R&R, the Court will address these three claims separately.

1.    *Ineffective Assistance of Appellate Counsel – Not Raising the Trial Court's Failure to Include an Aggravated-Assault Jury Instruction on Appeal*

The Magistrate Judge analyzed the first claim of ineffective assistance of appellate counsel and found that: (i) the Ohio Court of Appeals' decision on this issue was entitled to AEDPA deference; and (ii) Petitioner had failed to show that the Ohio Court of Appeals' determination was unreasonable.  (ECF No. 28, PageID #1589–97).  Petitioner objects, arguing that the Ohio Court of Appeals' decision is not entitled to AEDPA deference, he was unable to fully brief each issue in his Rule 26(B) application to reopen because of the 10-page limit, and he met his burden of demonstrating that the trial court erred.  (ECF No. 31, PageID #1677–79).

As an initial matter, the Court finds Petitioner's objection to this claim improper for two reasons.  First, Petitioner does not properly object to the Magistrate Judge's determination on AEDPA deference, as he simply states, without elaboration, argument, or citation to authority: "For the reasons already given, the Appellate Court's decision is not entitled to AEDPA deference." (ECF No. 31, PageID #1677).  Nowhere else in his objections, does Petitioner discuss or reference AEDPA deference.  Second, Petitioner again raises the exact same argument from his traverse, with his merits argument being taken, mostly word for word, from the corresponding portions of his traverse.  (*Compare* ECF No. 31, PageID #1645–48, *with* ECF No. 26, PageID #1500–06).[2]  Petitioner's objection does not explain how the Magistrate Judge's conclusion was

---

[2] For the merits of this claim, Petitioner essentially incorporates the previous section of his objections that addresses his Ground Two claim.  (ECF No. 31, PageID #1679–80 (citing *id.* at PageID #1645–48)).

erroneous; other than restating the same argument raised before.  As a result, the Court **OVERRULES** Petitioner's objection as improper.

Alternatively, the Court would still find that Petitioner's claim would fail on the merits. Courts analyze ineffective assistance of counsel based on the two-prong test from *Strickland v. Washington*.[3]  *See Clardy v. Pounds,* 126 F.4th 1201, 1209 (6th Cir. 2025) (using the *Strickland* test to analyze a petitioner's ineffective assistance of counsel claim).  First, a petitioner must show that counsel's performance was deficient, which requires that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  Second, the petitioner must show that deficient performance prejudiced the outcome of the case.  *Id.*  A determination of prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id.* at 694.  Demonstrating sufficient prejudice is a "high burden."  *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) ("Proving prejudice is not easy.").  When "an underlying legal claim lacks merit, the failure of the [petitioner's] trial counsel to raise that claim does not constitute ineffective assistance of counsel."  *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020).  Furthermore, "[n]o prejudice flows from the failure to raise a meritless claim."  *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

The Ohio Court of Appeals addressed this ineffective assistance of appellate counsel claim when it considered Petitioner's Rule 26(B) application to reopen as follows:

> The Ohio Supreme Court has adopted the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), as the appropriate standard to assess whether an appellant has raised a "genuine issue" as to the ineffectiveness of appellate counsel in an application to reopen an appeal. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996).  "To show ineffective assistance," the appellant "must prove that his counsel [was] deficient for failing to raise the issues that he now presents and that there was a reasonable

---

[3] 466 U.S. 668, 104 S. Ct. 2052, L. Ed. 2d 674 (1984).

probability of success had they presented those claims on appeal." *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶ 5.

* * *

In his first error, Knowlton argues that appellate counsel was ineffective for failing to argue that the lower court should have given a "lesser included" instruction on aggravated assault. Knowlton was charged and convicted of felonious assault and no instruction for aggravated assault was sought or given to the jury.

As the Ohio Supreme Court explained in *State v. Deem*, 40 Ohio St.3d 205, 533 N.E. 2d 294 (1988), aggravated assault is an offense of an inferior degree to felonious assault rather than a lesser included offense, since "its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *Id*. at 210-211. In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. *Id*. at paragraph four of the syllabus.

A two-part inquiry is conducted when analyzing whether there is sufficient evidence of provocation. First, "an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998). Provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d 630, 635, 590 N.E.2d 272 (1992). "If the objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" (Citations omitted.) *State v. Hale*, 11th Dist. Portage No. 2007-P-0015, 2007-Ohio-6244, ¶66.

Knowlton argues that there was sufficient evidence of serious provocation because there were "allegations of inappropriate behavior between the victim and [Knowlton's] * * * daughters." While the record did contain references to Knowlton's belief that McBride, who was dating Knowlton's former girlfriend, had harmed his children in some manner, the record does not indicate that this suspicion caused a "sudden passion or fit of rage." The text message exchange which precipitated the confrontation was initiated by McBride. McBride sent a series of text messages to Knowlton, stating "And for you to talk like someone is touching your kids you got me all the way f***ed up" and indicating that McBride was caring for Knowlton's kids. Knowlton initially responded, "Bye bye." He subsequently stated that his child learned to kiss since McBride was in the home. Knowlton did not respond with shock to McBride's message but, instead, his messages indicated that Knowlton had not just learned this information at or around the time he shot McBride. Further, although Knowlton argues that he acted in a sudden fit of passion, he did not seek out McBride to harm him. Rather, McBride was the one who suggested they "settle this like men."

Knowlton alleges that, although there was a period of time between his learning of the alleged abuse and the assault, his rage was reignited when McBride came to confront him.  However, there was no discussion of the allegations during the physical confrontation.  If anything, it appears that the men both had a plan to engage in a fight with Knowlton providing McBride his location.  "Mutual combat" has been found to be a "'classic example' of serious provocation."  *State v. Spencer*, 2018-Ohio-641, 105 N.E.3d 418, ¶ 18 (12th Dist.), citing *Shane* at 635. However, mutual combat has not been found applicable where both parties were not engaging in a fight while armed with deadly weapons.  *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 15 ("This may have been a consensual fight, but it was not on equal terms, and only James had a weapon.").  The facts in the present matter demonstrated McBride did not have his weapon on him during the altercation.

Given the limited evidence to support a finding that Knowlton was acting in a sudden passion or fit of rage, we do not find error in the trial court's failure to give such instruction or ineffectiveness by trial counsel for failing to seek such instruction.  As this court has observed "in most cases, an aggravated assault instruction is incompatible with instructions on self-defense, so that both cannot be given together."  *State v. Beaver*, 119 Ohio App.3d 385, 397, 695 N.E.2d 332 (11th Dist. 1997).  It is evident from a review of the trial transcript that defense counsel chose to focus on a strategy of pursuing self-defense in the present matter.

(ECF No. 15-1, PageID #299–303).

The Ohio Court of Appeals applied the correct standard under *Strickland* for analyzing Petitioner's ineffective assistance claim.  As to the merits of this claim, Magistrate Judge Grimes addressed the arguments raised in Petiotiner's traverse and the instant objection in the following manner:

Knowlton argues that there was evidence of "serious provocation" and "a reasonable probability that the jury could have found provocation" that would have entitled him to an aggravated assault instruction. Doc. 26, at 28, 32. For his *serious provocation* argument, Knowlton says that "discovering a spouse in the act of adultery" is a "classic example[] of serious provocation." *Id*. at 28. He claims that he discovered such an act of adultery between his children and McBride. *Id*. at 29–30. Aside from the fact that neither of these individuals are Knowlton's spouses, the Ohio court of appeals found that any provocation that Knowlton may have experienced due to his belief regarding these matters occurred well in advance of his shooting McBride.  Knowlton concedes that "a cooling off period may have elapsed," but contends that "the fire would have become rekindled the moment the face-to-face encounter took place." Doc.26, at 30–31. The Ohio court of appeals

considered this argument and rejected it, finding that "there was no discussion of the[se]allegations during the physical confrontation."*Id*.at 175.Knowlton cites transcribed police interviews with the witnesses and references testimony at trial, Doc. 26, at 30–32, but neither of these items show that any rage regarding Knowlton's children was "reignited" in Knowlton just before his confrontation with McBride.  "Past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off."  *State v. Ortiz*, No. 2015CA00098, 2016 WL 530659, at \*8 (Ohio Ct. App. Feb.1, 2016) (citing *State v. Huertas*, 553 N.E.2d 1058, 1068–1069(Ohio1990)and *State v. Pierce*, 414 N.E.2d 1038(Ohio1980)).

Knowlton points out that the Ohio court of appeals found that he entered into "mutual combat" with McBride, which "alone would establish serious provocation." *Id*. at 29. But the Ohio court of appeals explained that "mutual combat has not been found applicable where," as here, "both parties were not engaging in a fight while armed with deadly weapon." Doc. 15-1, at 175. The court noted that the facts "demonstrated McBride did not have his weapon on him during the altercation." *Id*. Knowlton has not in his Petition or Traverse challenged this finding by the Ohio court of appeals.

In his motion to expand the record, Knowlton asserts that he can show that "McBride possessed a firearm when Knowlton shot him." Doc. 25, at 2. In support, he cites McBride's transcribed police interview, which he attached to his motion. *Id*. But because the Ohio court of appeals adjudicated this claim on the merits, the Court is limited to the evidence that was presented to the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) (citing 28 U.S.C. § 2254(e)(2)). And Knowlton didn't present McBride's transcript in his Rule 26(B) application to reopen, so the Court can't consider it. *See Pinholster*, 563 U.S. at 186.

Even so, McBride's transcribed police interview doesn't show that McBride "possessed a firearm when Knowlton shot him"; it indicates otherwise. *See* Doc. 25-2, at 5, 9–12. So even if the Court did consider this evidence, Knowlton hasn't shown that there was any evidence, let alone sufficient evidence, of *serious provocation* to warrant an inferior-degree jury instruction. *See also, e.g., State v. Murray*, 2019 WL 7670102, at \*7 (Ohio Ct. App. Dec. 30, 2029) (finding that the court did not err by not giving an aggravated-assault instruction on a felonious-assault charge; "[a]n instruction on a lesser-included offense is not warranted every time 'some evidence' is presented to support the lesser offense.") (citing *State v. Shane*, 590 N.E.2d 272, 275 (1992)). And because Knowlton hasn't shown that the Ohio court of appeals' decision on this issue was unreasonable, he hasn't shown that the appellate court's rejection of his ineffective-assistance-of-appellate-counsel claim for failing to raise on direct appeal this trial-court-error claim was unreasonable. See Jones, 463 U.S. at 750–54 (Appellate counsel is not obligated to advance every possible argument on appeal); Greer, 264 F.3d at 676 (counsel is not ineffective for failing to raise an issue that lacks merit; "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

(ECF No. 28, PageID #1594–97). The Court adopts this analysis and the Magistrate Judge's conclusion. Petitioner has not shown that the Ohio Court of Appeals applied the wrong standard or that its conclusion that there was insufficient evidence of "serious provocation" to warrant a jury instruction for aggravated assault was either: (i) an unreasonable application of *Strickland* and applicable federal law; or (ii) an unreasonable determination of the facts in light of the evidence presented before the state court.

2.  *Ineffective Assistance of Appellate Counsel – Failure to Raise Ineffective Assistance of Trial Counsel (14 Things)*

In the Petition, Knowlton argues that his appellate counsel was ineffective for failing to raise on direct appeal an ineffective-assistance-of-counsel claim for trial counsel's failure to do fourteen specific things:

(a) Failing to request the jury instruction for a lesser included/ inferior offense of aggravated assault for felonious assault when at trial, evidence of provocation was present. And failing to object to the jury instructions.

(b) Failure to object to hearsay witness testimony of bullet entry and exit wounds when no medical/forensic/expert testimony or evidence was presented.

(c) Failed to ensure defense witness Thomas Knox was properly served by subpoena or deposition prior to trial.

(d) Failure to request continuance to ensure defense witness was present for trial when subpoena return service was not filed with the court.

(e) Failed to consistently object to prosecutor's questions and comments regarding defendant's Fifth Amendment right to remain silent and other improper comments.

(f) Failed to provide or allow defendant to review Transcribed Recorded Police Interviews before trial, and photos which were provided with discovery.

(g) Failed to object to evidence admitted without proper authentication.

(h) Failed to subpoena/investigate victim's medical records.

(i) Failed to admit into evidence the transcribed police interviews of Justin Nemergut and Scott Lindsay.

(i) Failed to object to the prosecution witness bolstering.

(k) Failed to fully investigate this case. Failed to interview potential witness (State or Defense).

(l) Trial counsel was ineffective for failing to investigate a second firearm recovered near the crime scene.

(m) Trial counsel failed to request mistrial after the State's witnesses were identified conversing prior to and during testimony.
(n) Cumulative effect of trial counsel's errors.

(ECF No. 1, PageID #32–33).  The Magistrate Judge found the last six items (items (i) through (n)) to be procedurally defaulted, while the remaining eight items were meritless.  (ECF No. 28, PageID #1597–1609).

> a.    Six procedurally defaulted items – (i) through (n)

The Magistrate Judge noted, and the record reflects, that the final six items on Petitioner's list (items (i) through (n)) were not included in Petitioner's Rule 26(b) application to reopen.  (*Compare* ECF No. 15-1, PageID #248, *with* ECF No. 1, PageID #32–33; ECF 28, PageID #1597).  The Magistrate Judge concluded that these six items/sub-claims were therefore procedurally defaulted, after finding Petitioner had not shown cause or actual innocence to excuse the procedural default.  (ECF No. 28, PageID #1597–1601).  Petitioner's objections do not address the Magistrate Judge's conclusion about procedural default.  Upon review of the record, and given Petitioner's failure to object, the Court **ADOPTS** the R&R's conclusion that these six sub-claims are procedurally defaulted.

Even if Petitioner had objected to procedural default, the Court would still overrule the objection as meritless.  A claim will be considered procedurally defaulted if: (i) the petitioner has failed to comply with a state procedural rule; (ii) the state courts enforced the rule; (iii) the state procedural rule is an adequate and independent state law ground for denying review of a federal constitutional claim; and (iv) the petitioner cannot show cause and prejudice to excuse the default.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A state habeas petitioner must give the state courts a "*fair*" opportunity to act on his claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (emphasis in original).  If the petitioner has not

done so and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, which means this court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161–62, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams*, 460 F.3d at 806. Thus, the failure to raise the six sub-claims in his Rule 26(B) application to reopen deprived the state court of an opportunity to review and make a determination on these claims and subjects those claims to procedural default.

A habeas petitioner can overcome procedural default by showing either: (i) good cause for the default and resulting prejudice; or (ii) that he is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Petitioner fails to make either showing. As discussed previously, Petitioner has not established a viable claim for actual innocence to excuse procedural default in this case. The Court also finds that Petitioner has established no cause for failing to raise items (i) through (n) in his Rule 26(B) application to reopen. *See Farthing v. Forshey*, No. 24-3837, 2025 U.S. App. LEXIS 7807, at *6 (6th Cir. Apr. 2, 2025) ("[I]t is common for appellate courts to impose page limits on briefing. And while page limits may restrict the way arguments are presented, they do not prevent the presentation of arguments altogether." (citing *Seymour v. Walker*, 224 F.3d 542, 551 (6th Cir. 2000)).

b.       Remaining eight items – (a) through (h)

First, the Court finds that Petitioner's objections as to the remaining eight items—(a) through (h)—are improper.  Once again, Petitioner provides essentially the same merits arguments that he put forth in his traverse—taking most portions word for word and simply omitting certain sections of the analysis.  (*Compare* ECF No. 31, PageID #1649–56, *with* ECF No. 26, PageID #1507–24).  Thus, Petitioner's objections are improper and can be overruled solely on this basis.  *See Aldrich*, 327 F. Supp. 2d at 747; *United States v. Bowers*, No. 06-7, 2017 U.S. Dist. LEXIS 212021, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017).  That said, the Court would also overrule these objections on the merits.

As recognized by the Magistrate Judge, the first item (item (a) – failure to request a lesser-degree jury instruction) was rejected by the Ohio Court of Appeals when it rejected Petitioner's claim that the trial court erred for not including the lesser-degree jury instruction.  (ECF No. 28, PageID #1604 (citing ECF No. 15-1, PageID #302)).  As discussed previously, the Court found Petitioner's ineffective assistance of appellate counsel claim for not raising the trial court's failure to include the lesser-degree jury instruction to be meritless.  For the same reasons, a claim that appellate counsel was ineffective for failing to challenge trial counsel's failure to request such a jury instruction is also meritless.

As for the remaining items—(b) through (h)—the Ohio Court of Appeals considered and rejected those sub-claims as follows:

> In his second alleged error, Knowlton raises various complaints with representation by trial counsel.  First, Knowlton argues that trial counsel erred by failing to object to "hearsay witness testimony" regarding the bullet entry and exit wounds in the absence of expert testimony.  Knowlton, however, references McBride's and Lindsay's testimony describing the gunshot wounds suffered by McBride.  This is not hearsay but admissible testimony regarding their observations.

To the extent that Knowlton contends counsel should have presented expert testimony relating to the nature of the wounds and whether the injuries supported his claim of self-defense, we will not second-guess trial counsel as to this issue. There was consistent testimony from multiple witnesses regarding the details of where the shots hit and the direction in which Knowlton was firing. It is reasonable to conclude that counsel determined there was no relevant expert testimony available or that such testimony may contradict the self-defense claim. "[I]t is generally a legitimate trial strategy for defense counsel not to present expert testimony * * * because such an expert might uncover evidence that further inculpates the defendant." (Citation omitted.) *State v. Craig*, 11th Dist. Lake No. 2021-L-023, 2022-Ohio-2200, ¶ 14.

We also find no merit to Knowlton's claim that counsel was ineffective for the failure to seek admission of medical records. He does not demonstrate how such records would have proven he acted in self-defense. Courts have declined to second-guess trial counsel's strategic decision in relation to the admission of medical records where the defendant failed to demonstrate "why the records were necessary or how the result of the trial was unreliable or unfair because the records were not admitted." *State v. Vales*, 2020-Ohio-245, 143 N.E.3d 577, ¶ 43 (5th Dist.).

Knowlton next argues that trial counsel was ineffective by failing to ensure a defense witness was subpoenaed and to seek a continuance to allow his appearance. The record does not establish what testimony this witness would have offered or how it would have impacted the defense. "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of [a] showing that [the] testimony * * * would have assisted the defense." (Citation omitted.) *State v. Heald*, 11th Dist. Lake Nos. 2021-L-111 and 2021-L-112, 2022-Ohio-2282, ¶ 30.

Knowlton raises other arguments which he fails to support with additional argumentation: counsel did not provide certain evidence to him or object to evidence that was not authenticated. Pursuant to App.R. 26(B)(2)(d), the defendant must indicate the basis for allegations of how counsel was deficient as well as demonstrate the manner in which this prejudicially affected the outcome of the appeal." In the absence of argumentation in support of these alleged errors, we decline to find they have merit.

(ECF No. 15-1, PageID #303–04).

The Magistrate Judge conducted a thorough analysis and found that these claims all lacked merit. (ECF No. 28, PageID #1604–09). The Court adopts this analysis and incorporates it as its own. The Court similarly finds that Petitioner has not demonstrated that: (i) the Ohio Court of

Appeals' rejection of his claims was unreasonable; or (ii) his appellate counsel was constitutionally ineffective for failing to raise the aforementioned ineffective assistance of trial counsel claims. Accordingly, the Court **OVERRULES** Petitioner's objections as to the denial of his claims related to failure to raise ineffective assistance of trial counsel claims as both improper and meritless.

3.    *Ineffective Assistance of Appellate Counsel – Failure to Raise Prosecutorial Misconduct Claim*

For this portion of Ground Five, Petitioner argues that his appellate counsel provided ineffective assistance by failing to raise a claim of prosecutorial misconduct.  (ECF No. 1, PageID #33).  Petitioner asserts eight instances of prosecutorial misconduct:

(a) The prosecutor made a false allegation during his opening statement.
(b) The prosecutor injected his own opinion in several instances.
(c) The prosecutor intentionally misled information in order to confuse the jury
(d) The prosecutor vouched for a witness' credibility.
(e) The prosecutor commented on and elicited testimony regarding the defendant's right to remain silent.
(f) The prosecutor deliberately elicited, and then failed to correct, false and misleading testimony from the State's key witnesses.
(g) The prosecutor committed a Brady violation by withholding exculpatory evidence showing perjury.
(h) The prosecution violated the ban on the "Golden Rule" argument thus violating the defendant's right to a fair trial and due process of law, Fifth, Sixth and Fourteenth Amendments.

(*Id.*).

The Magistrate Judge found that Petitioner's claims based on *Brady*, eliciting false testimony from the State's key witness, and the "Golden Rule" were all procedurally defaulted, as they were not raised in Petitioner's Rule 26(B) application to reopen, and Petitioner had not alleged cause or shown actual innocence to excuse the default.  (ECF No. 28, PageID #1609–10).  The Magistrate Judge then found that Petitioner's remaining prosecutorial misconduct claims failed on the merits because Petitioner failed to demonstrate the Ohio Court of Appeals' decision was an unreasonable application of *Strickland*.  (ECF No. 28, PageID #1613–17).  In his objections,

Petitioner argues that his claims of prosecutorial misconduct have merit and therefore his appellate counsel was ineffective for failing to raise them on appeal; he does not address procedural default. (ECF No. 31, PageID #1661–77, 1681–82).

First, the Court finds that Petitioner's objections as to this ineffective assistance of appellate counsel claim to be improper.  Petitioner provides essentially the same merits arguments that he put forth in his traverse—with most portions simply taken word for word from the corresponding sections in Petitioner's traverse.  (*Compare* ECF No. 31, PageID #1661–77, *with* ECF No. 26, PageID #1531–1553).  Thus, Petitioner's objections are improper and can be overruled solely on this basis.  *See Aldrich*, 327 F. Supp. 2d at 747; *United States v. Bowers*, No. 06-7, 2017 U.S. Dist. LEXIS 212021, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017).

Second, Petitioner does not address the Magistrate Judge's conclusion that the *Brady*-based, State's key witness, and "Golden Rule" claims are procedurally defaulted.  The record also reflects that Petitioner failed to raise these specific claims in his Rule 26(B) application to reopen. (ECF No. 15-1, PageID #249–52).  The Court also agrees with the Magistrate Judge's conclusion that Petitioner failed to demonstrate cause or actual innocence to excuse the default.  Accordingly, the Court **ADOPTS** the R&R's conclusion that these three claims are procedurally defaulted.

Finally, the Court finds that the remaining claims of ineffective assistance of counsel based on prosecutorial misconduct are meritless.  The Ohio Court of Appeals' addressed Petitioner's claims concerning prosecutorial misconduct as follows:

> In his third alleged error, Knowlton argues that appellate counsel should have raised various issues relating to prosecutorial misconduct. "In a claim of prosecutorial misconduct, we determine (1) whether the prosecutor's remarks were improper, and if so, (2) whether the remarks prejudicially affected the appellant's substantial rights." *State v. Nixon*, 11th Dist. Portage No. 2023-P-0001, 2023-Ohio-4871,  154. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments."  (Citation omitted.)  *Id.*

First, Knowlton asserts that the State incorrectly indicated McBride had a concealed carry permit while he testified to the contrary. The prosecutor was mistaken in this assertion but McBride's testimony clarified this issue. Further, there is nothing to indicate this mistake impacted the conviction. McBride's possession of a CCW license is inconsequential to the circumstances of the shooting and Knowlton's claim that he acted in self-defense.

Knowlton also argues that the State improperly injected its opinion into closing argument by comparing the conflict between the two men to a junior high fight. He fails to demonstrate how this comment constituted misconduct. Similarly, as to the prosecution's statement that the record proved beyond a reasonable doubt that Knowlton did not act in self-defense, Knowlton does not cite authority demonstrating how this was improper. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 160 (prosecution's statement that the evidence proved the offense beyond a reasonable doubt was not improper).

Knowlton also takes issue with the State's comments about a witness, Lindsay, testifying honestly. It has been held that "[c]ommenting on the truthfulness of a witness is not proper." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 45 (8th Dist.). The statements, viewed in context, indicated that Lindsay was honest in admitting his past felony charges in relation to his desire to not be found in possession of a firearm. Even presuming the prosecutor improperly spoke to Lindsay's honesty in this regard, the record does not indicate the statements impacted the outcome of the trial, as they related to the recovery of the gun rather than the facts surrounding the incident itself and whether Knowlton acted in self-defense. *See State v. Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142, ¶ 67 (the defendant's substantial rights were not prejudicially affected by the prosecutor's comments when the jury would have found him guilty absent such remarks).

Knowlton also takes issue with the prosecutor's statement, in closing argument, that, if the law allowed Knowlton to claim self-defense merely because McBride brought a gun to the location of the shooting, it would lead to "a whole bunch of shootings." An objection to this comment was sustained. Again, Knowlton does not advance an argument that demonstrates this impacted his substantial rights. The jury was instructed correctly on the law relating to self-defense and, as noted in this court's opinion, the facts supported the jury's conclusion that Knowlton did not demonstrate self-defense.

Knowlton also argues that the prosecutor misled the jury by inquiring of a witness regarding only certain text messages between McBride and Knowlton. There is nothing to indicate that this constituted misconduct. Although there were some messages in the exhibit that may not have been referenced by the prosecutor, these messages were not relevant to the dispute leading to the assault and the State was not required to ask questions to the witnesses regarding every message.

Finally, Knowlton argues that the prosecutor committed misconduct by making comments about his failure to speak to police or give testimony.  The prosecutor made comments about the difficulty police had in getting in contact with Knowlton and that they did not speak with him.  The prosecutor further stated that there was a lack of evidence to explain why Knowlton shot McBride and that no one could testify as to Knowlton's thoughts or feelings.  It was well-settled that a prosecutor may not comment on a defendant's failure to testify.  *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 (1965).  To the extent that the prosecution commented on Knowlton's failure to offer evidence to prove intent and/or self-defense, "the prosecution is entitled to comment on defendant's failure to offer evidence."  *State v. Vaughn*, 11th Dist. Ashtabula No. 2018-A-0045, 2019-Ohio-268, ¶ 37.  To the extent that the prosecutor's comments related to Knowlton's failure to give a statement to police and/or failure to testify, the record demonstrates that the court properly instructed the jury not to consider this.  It instructed the jury, during the testimony, that it "will disregard any statement made by the prosecuting attorney regarding the Defendant communicating with or speaking with law enforcement, and you will not consider that for any purpose whatsoever" and, further, during closing arguments, that "the fact that the Defendant did not testify must not be considered for any purpose."  Given the nature of the comments and the curative instructions, we do not find that the statements prejudiced Knowlton or resulted in his conviction.  *See State v. Fitzgerald*, 11th Dist. Portage No. 2003-L-084, 2004-Ohio-6173, ¶ 50 ("the alacrity with which the court issued its curative instruction functioned to further lessen the possibility of prejudice"); *State v. Smith*, 2d Dist. Montgomery No. 29597, 2023-Ohio-4565, ¶ 139 ("[w]e presume that the jury followed" instructions not to consider the defendant's failure to testify for any purpose).

For the foregoing reasons, Knowlton's Application to Reopen Appeal is overruled.

(ECF No. 15-1, PageID #304–07).

Petitioner's objections do not attempt to explain or argue how the Ohio Court of Appeals' decision was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented before it.  *See* 28 U.S.C. § 2254(d).  In fact, Petitioner never addresses the Ohio Court of Appeals' decision.  Instead, he merely cites portions of the trial transcript he takes issue with, sometimes provides quotes or parentheticals from some caselaw, and sometimes states his conclusion as to why the cited portions are prejudicial.  (ECF No. 31, PageID #1661–67).  For sub-claims (a), (c), and (d), Petitioner does

not provide any legal argument or citation, and solely cites to the alleged offending portions of the transcript.  (*Id.* at PageID #1661–65).

For sub-claim (b), which concerns the prosecutor injecting his own opinion into the case, Petitioner cites portions of the prosecutor's closing argument, cites a Fourth Circuit case, and states that the cited portions are "highly irrelevant, inadmissible, and prejudicial rendering the trial fundamentally unfair."  (ECF No. 31, PageID #1662).  However, this falls short of explaining or providing authority as to how the cited comments rendered his trial fundamentally unfair.  More importantly, Petitioner does not establish that the Ohio Court of Appeals' determination that the opinions stated by the prosecutor did not constitute misconduct, particularly when viewed in context of the trial, and did not affect the outcome of the case, were unreasonable or contrary to established law.

The Magistrate Judge provided a full analysis of the non-procedurally defaulted claims and found that Petitioner did not "overcome the 'doubly deferential' standard of review by showing that the Ohio court of appeals' application of *Strickland* when reviewing Knowlton's ineffective-assistance-of appellate-counsel claims was unreasonable."  (ECF No. 28, PageID #1613–17).  The Court adopts this analysis.  In particular, the analysis addressing sub-claim (e)—concerning the prosecutor's comments on Petitioner's silence—with the Magistrate Judge stating:

> Even if the prosecutor's comment, which did not explicitly reference Knowlton's purported post-arrest silence, could be construed as a comment on Knowlton's presumed post-arrest silence, Knowlton's attorney promptly objected and the trial court sustained the objection and immediately provided to the jury a specific curative instruction.  Doc. 15-2, at 375–77 (trial court's immediate instruction: "Ladies and gentlemen of jury, you will disregard any statement made by the prosecuting attorney regarding the Defendant communicating with or speaking with law enforcement, and you will not consider that for any purpose whatsoever.").  And later, the court again provided another curative instruction to the jury.  Doc. 15-2, at 391 ("statements that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them.");  *see Greer v. Miller*, 483 U.S. 756, 766 (1987). ("The sequence of

events in this case—a single question, an immediate objection, and two curative instructions—clearly indicates that the prosecutor's improper question did not violate Miller's due process rights.") (footnote omitted).  So even if the prosecutor's statement could be said to have commented on Knowlton's silence "while in custody," the Ohio court of appeals' finding on this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

Knowlton contends that the prosecutor's comments about the lack of evidence to show that Knowlton acted in self-defense violated his right to remain silent.  Doc. 26, at 134.  But the Ohio court of appeals explained that "the prosecution is entitled to comment on defendant's failure to offer evidence."  Doc. 15-1, at 180 (citing *State v. Vaughn*, No. 2018-A-0045, 2019 WL 355168, at *4 (Ohio Ct. App. Jan. 28, 2019)); *see also State v. Collins*, 733 N.E.2d 1118, 1122 (Ohio 2000)).  Knowlton has not shown that the Ohio court of appeals' finding "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

(ECF No. 28, PageID #1616–17).  Accordingly, the Court **OVERRULES** Petitioner's objections as to the denial of his claim for ineffective assistance of appellate counsel based on a failure to raise prosecutorial misconduct as both improper and meritless.

### D.    Grounds Two and Four

In Ground Two, Petitioner argues that the trial court erred by failing to instruct the jury on the inferior offense of aggravated assault.  (ECF No. 1, PageID #25).  In Ground Four, Petitioner argues that prosecutorial misconduct during his trial violated his Fifth, Sixth, and Fourteenth Amendment rights.  (*Id.* at PageID #29).  The Magistrate Judge found both these claims were procedurally defaulted because: (i) these claims should have been but were not raised on direct appeal; and (ii) Petitioner's claims of ineffective assistance of appellate counsel cannot excuse the default because those claims lack merit.  (ECF No. 28, PageID #1617–19).

In his objections, Petitioner concedes that he failed to raise these errors on direct appeal but argues that his claims for ineffective assistance of appellate counsel excuse any procedural default.  (ECF No. 31, PageID #1645, 1661).  While a claim for ineffective assistance of appellate

counsel may serve as cause to excuse a procedural default, it can only do so if the ineffective assistance of appellate counsel claim itself is not procedurally defaulted *and* the Court finds that appellate counsel was constitutionally ineffective.  S*ee Edwards v. Carpenter*, 529 U.S. 446, 451–53, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); *Buchanan v. Curley*, 2024 U.S. App. LEXIS 5916, at *11 (6th Cir. 2024).  As discussed in the previous section, the Court found that Petitioner's claims of ineffective assistance of appellate counsel were either procedurally barred or lacked merit—*i.e.*, Petitioner has not established that his appellate counsel was constitutionally ineffective.  Thus, Petitioner's claims of ineffective assistance of appellate counsel cannot excuse the procedural default of his claims in Grounds Two and Four.  Petitioner has not otherwise demonstrated cause and prejudice or actual innocence to excuse the default.  Accordingly, the Court **OVERRULES** Petitioner's objections as to the dismissal of Grounds Two and Four.

### E.      Ground Three

In Ground Three, Petitioner asserts that he received ineffective assistance of trial counsel, listing fourteen ways that his counsel was constitutionally ineffective.  (ECF No. 1, PageID #26–29).  As previously discussed, Petitioner listed the following fourteen items:

> (a) Failing to request the jury instruction for a lesser included/ inferior offense of aggravated assault for felonious assault when at trial, evidence of provocation was present. And failing to object to the jury instructions.
> (b) Failure to object to hearsay witness testimony of bullet entry and exit wounds when no medical/forensic/expert testimony or evidence was presented.
> (c) Failed to ensure defense witness Thomas Knox was properly served by subpoena or deposition prior to trial.
> (d) Failure to request continuance to ensure defense witness was present for trial when subpoena return service was not filed with the court.
> (e) Failed to consistently object to prosecutor's questions and comments regarding defendant's Fifth Amendment right to remain silent and other improper comments.
> (f) Failed to provide or allow defendant to review Transcribed Recorded Police Interviews before trial, and photos which were provided with discovery.
> (g) Failed to object to evidence admitted without proper authentication.
> (h) Failed to subpoena/investigate victim's medical records.

(i) Failed to admit into evidence the transcribed police interviews of Justin Nemergut and Scott Lindsay.
(i) Failed to object to the prosecution witness bolstering.
(k) Failed to fully investigate this case. Failed to interview potential witness (State or Defense).
(l) Trial counsel was ineffective for failing to investigate a second firearm recovered near the crime scene.
(m) Trial counsel failed to request mistrial after the State's witnesses were identified conversing prior to and during testimony.
(n) Cumulative effect of trial counsel's errors.

(ECF No. 1, PageID #32–33).

The Magistrate Judge found that Ground Three was procedurally defaulted.  (ECF No. 28, PageID #1619–21).  He found that three claims—items (g), (i), and (l)—were procedurally defaulted because Petitioner failed to raise them in his post-conviction petition or on appeal from the denial of the petition to the Ohio Court of Appeals.  (*Id.* at PageID #1619 (citing ECF No. 15-1, PageID #372–78, 396–97, 403, 448–53)).  The Magistrate Judge also found that all fourteen items were procedurally defaulted because Petitioner failed to appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court and his claims of "perceived futility" could not excuse this default.  (*Id.* at PageID #1620).  Finally, the Magistrate Judge found that Petitioner's argument that he properly raised his Ground Three claims in his Rule 26(B) application to reopen to be unavailing.  (*Id.*).

In his objections, Petitioner argues that his Ground Three claims are not procedurally defaulted because he raised them in his Rule 26(B) application to reopen.  (ECF No. 31, PageID #1648.  As noted by the Magistrate Judge, Petitioner did not preserve or fully present his Ground Three claims by raising them in his Rule 26(B) application because a claim for ineffective assistance of appellate counsel is analytically distinct from the underlying substantive claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir. 2003)); *Enyart v. Coleman*, 29 F.

Supp. 3d 1059, 1098 (N.D. Ohio 2013). Petitioner also argues that his claim of ineffective assistance of appellate counsel excuses his default. For the same reasons discussed previously, Petitioner's Ground Five claims of ineffective assistance of appellate counsel are either procedurally defaulted or fail on the merits; thus, they could not serve as cause to excuse any procedural default. The Court agrees with the Magistrate Judge's conclusion and finds that Ground Three is procedurally defaulted. Accordingly, the Court **OVERRULES** Plaintiff's objections to the dismissal of Ground Three.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's objections (ECF No. 31) are **OVERRULED**. The Court **ADOPTS** Magistrate Judge Grimes's R&R (ECF No. 28) and incorporates it fully herein by reference. The Petition (ECF No. 1) is **DENIED IN PART** and **DISMISSED IN PART**. The Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision cannot be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

Date: January 30, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**